JOHN P. RICE, JR. AND MAUREEN F. RICE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rice v. Commissioner
Docket No. 27688-91
United States Tax Court
T.C. Memo 1994-204; 1994 Tax Ct. Memo LEXIS 200; 67 T.C.M. (CCH) 2921; May 5, 1994, Filed *200 Decision will be entered under Rule 155. For petitioners: Craig A. Adams. For respondent: Dawn Marie Krause. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Additions to Tax
Section [1]
Section Section Section Year
Deficiency
6653(a)(1)(A) 6653(a)(1)(B) 6653(a)(1)
6661(a) 1986
$ 110,021
$ 5,501 *
$  --
$ 27,505
1987
175,618
8,781 *
--
43,905
1988
104,130
--
--
5,207
26,033
* 50 percent of the interest due on the portion of the underpayment
attributable to negligence. Respondent determined that the entire
underpayment was attributable to negligence. We must decide the following issues: 1. Does section 7605(b) preclude respondent *201 from making the determinations set forth in the notice of deficiency (notice) for each of the years at issue? We hold that it does not. 2. Are petitioners entitled to deduct certain miscellaneous expenses claimed in Schedule C of their tax returns (Schedule C) for each of the years at issue? We hold that they are to the extent stated herein. 3. Are petitioners entitled to deduct certain travel and entertainment expenses claimed in Schedule C for each of the years at issue? We hold that they are not. 4. Are petitioners entitled to deduct for 1988 the cost of a computer purchased during that year? We hold that they are not. 5. Are petitioners entitled to deduct certain expenses claimed in Schedule F of their tax returns (Schedule F) for each of the years at issue? We hold that they are to the extent stated herein. 6. Are petitioners entitled to a net operating loss (NOL) deduction for each of the years 1987 and 1988? We hold that they are not. 7. Are petitioners liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1986 and 1987 and under section 6653(a)(1) for 1988? We hold that they are. 8. Are petitioners liable for the addition to tax under *202 section 6661(a) for each of the years at issue. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners were residents of Gates Mills, Ohio, at the time the petition was filed. Petitioner John P. Rice, Jr. (Mr. Rice), [2] who has been self- employed since 1956, maintains law offices in Cleveland, Ohio. At all times pertinent to this case, Mr. Rice's practice consisted primarily of a general business and estate planning practice (law practice). During the years at issue, Mr. Rice was involved with, among other things, the acquisition by Manufacturing Mark I (later named American Hoist and Derrick Company) of Ohio Locomotive Crane Co., Inc. and The American Crane Corp., two companies of which he was an officer during those years. The American Crane Corp. was the majority owner of American Crane Europe which was also acquired by Manufacturing Mark I during the years at issue. Petitioner was *203 an officer and director of American Crane Europe during those years. The stock of Manufacturing Mark I was owned during the years at issue by three limited partnerships, one of which was Hobnobbin, a limited partnership organized under the laws of the State of New York. Petitioners are the general partners, and petitioners' seven children are the limited partners, of Hobnobbin. [3]
Hobnobbin was formed during 1980. As described in the partnership agreement, the purposes of Hobnobbin are: (a) To engage generally in the real estate business, including any subsurface mineral rights or interests; to improve or develop real estate, to construct, alter or repair buildings or structures on real estate; to invest in real estate; and to sell, exchange, lease and make contracts concerning real estate. (b) To acquire farm properties and other *204 real estate, by purchase, lease or otherwise, to improve and develop the same, and thereon to plant, sow, cultivate and harvest grains, hay, forage, vegetables, fruit and all kinds of farm produce and products of the soil. To breed, raise, buy, pasture, prepare for market, exhibit, sell, raise and deal in livestock of all kinds. To engage in the breeding, raising, selling and racing of standardbred horses; to engage in dairying and other related business. To acquire shares in horse auction companies, to obtain vehicles for transporting horses and other livestock, to establish routes for the transporting of horses and other livestock and all their conveniences and equipment suitable for the breeding, raising, selling and racing of horses and the dairying of cattle. In general, to conduct in all the several departments and branches, the business of farmers, horse raisers, horse racers, and dairymen, and to do everything incidental or conducive to the full accomplishment of the foregoing objects. (c) To invest in stocks, bonds and securities, and to engage, without limitation, in the purchase of, sale of, and dealing in stocks, bonds, notes, and evidences of indebtedness of any *205 person, firm, enterprise, corporation, or association, domestic or foreign, in bonds or other obligations of any government, state, municipality, school district, or any political subdivision thereof, domestic or foreign, and the bills of exchange in commercial papers, and any and all other securities of any kind, nature or description whatsoever; and gold, silver, grain, livestock and other commodities or upon the over-the-counter market, or otherwise, and, in general, without limitation of the foregoing, shall conduct such activities as are usual and customary in the investment in stocks, bonds, securities, livestock, commodities, and personal property. (d) To engage [sic] partnership agreements in the capacity of a general partner or limited partner, to become a member of the joint venture, or to participate in some other form of syndication for investments, and to buy, sell, lease and deal in services, personal property and real property.
During the years at issue, Mr. Rice was also an officer or director of several other companies. In addition, he was a partner in an entity named Tower City Parking. In Schedules C for 1986, 1987, and 1988, Mr. Rice listed his principal *206 business or profession as "legal", and petitioners claimed total deductions of $ 55,009.13, $ 54,902.91, and $ 64,451.57, respectively. Included in these total deductions were the following amounts claimed for miscellaneous expenses and travel and entertainment expenses: Expense
1986
1987
1988
Miscellaneous
$ 10,186.74
$  9,469.94
$ 10,616.58
Travel and Entertainment
16,930.67
14,955.41
11,084.96
Total
$ 27,117.41
$ 24,425.35
$ 21,701.54
Respondent disallowed the entire amounts of claimed miscellaneous and travel and entertainment deductions in the notice. Petitioners also claimed in Schedule C for 1988 a deduction of $ 7,745 for the cost of a computer purchased during that year. In the notice, respondent disallowed that deduction and instead allowed a depreciation deduction in the amount of $ 1,549 attributable to the purchase of the computer. At all times pertinent to this case, petitioners were engaged in breeding, boarding, selling, and racing standardbred horses as sole proprietors (the horse operation). The horse operation was conducted under the name Hobnobbin Farm. That operation, as well as other activities, was conducted on a farm consisting *207 of between 600 and 700 acres located in Chautauqua County, New York (the farm). There were four separate properties that comprised the farm. (For convenience, the parties designated the four farm properties as Farm 1, Farm 2, Farm 3, and Farm 4, and we shall follow the parties' designations when referring herein to those properties.) Farm 1 contains approximately 150 acres and is owned by petitioner Maureen F. Rice (Mrs. Rice). A house, four barns, and a shed are located on Farm 1. Petitioners used that house when they were at the farm during the years at issue. They were at the farm almost every weekend during those years. Farm 2 consists of approximately 150 acres and also is owned by Mrs. Rice. A house, two barns, and a shed are located on Farm 2. Petitioners' son Dennis, a construction worker, and his family used that house during the years at issue. During 1986, petitioners paid all of the costs of remodeling that house. Farm 3, consisting of about 260 acres, is owned by Hobnobbin. A house, five barns (one of which contains an office), and a shed are located on Farm 3. During the years at issue, petitioners rented Farm 3 from Hobnobbin under a net lease arrangement *208 under which petitioners agreed to pay, as rent, all the real property taxes for Farm 3 and to pay to Hobnobbin $ 1,550 per month, which corresponded to the mortgage payment on that property, and petitioners were allowed to retain the gas royalties generated by that property. [4]
During the years at issue, petitioners' *209 son Timothy, a veterinarian, and his family used a house located on Farm 3. During those years, Timothy operated a veterinarian operation, under the name of Chautauqua Veterinarian Services, in a building located on Farm 3. Farm 4 is owned by Chautauqua Partners Ltd. (Chautauqua Partners), [5] a limited partnership organized under the laws of the State of Ohio. Mr. Rice is the general partner, and Hobnobbin is one of the limited partners, of that partnership. A large house, a barn, a shed, and a lab are located on Farm 4. During the years at issue, petitioners' daughters, Molly and Nora, operated a bed and breakfast inn, called the Inn at Hobnobbin Farm, in the house located on Farm 4. *210 During the years at issue, petitioners were partners, shareholders, or joint venturers in other entities that owned horses, including Pickwick Farms, Inc., [6]Diamond Exchange Syndicate, Brand New Fella Syndicate, Super T. Syndicate, Top Flight Stable, [7] and Milrice Associates. Over the years, horses that petitioners or Mr. Rice owned with others were boarded by petitioners. *211 During the years at issue, Timothy Rice and John P. Rice, III, two of petitioners' children, owned seven horses and two horses, respectively, that were registered with the United States Trotting Association (USTA). Petitioners reported the claimed results of their horse operation in Schedules F for 1986, 1987, and 1988. There, they claimed deductions totaling $ 263,106.06, $ 296,425.77, and $ 284,174.54, respectively. [8] *212 In the notice, respondent disallowed deductions relating to the horse operation in the amounts of $ 226,421, $ 243,601, and $ 220,343, for 1986, 1987, and 1988, respectively. [9]
Included among the deductions claimed by petitioners in Schedules F for the years at issue were expenditures relating to all four farm properties, including all amounts they spent for upkeep, insurance, real estate taxes, telephone, and utilities relating to the houses located on Farms 1, 2, and 3. [10]
During 1986, petitioners paid, and also deducted as part of the Schedule F deductions for that year, labor costs relating to work done on the building on Farm 3 used by Timothy for his veterinarian operation. In addition, petitioners included as expenses *213 in Schedule F for 1986 insurance and contract labor for the Inn at Hobnobbin Farm. The expenses claimed by petitioners in Schedules F for the years at issue included periodic payments made to Timothy in identical or similar amounts. Those payments were not based on the amount of veterinarian services that Timothy rendered for petitioners during those years. In addition, the expenses deducted by petitioners in Schedules F for the years at issue included hospitalization insurance premiums they paid during those years for Dennis and Timothy and possibly for Molly and Nora. For 1987 and 1988, petitioners claimed NOL deductions of $ 225,614 and $ 128,523, respectively, that were calculated on the basis of the following claimed carryovers of NOLs from 1979 through 1985: Year
NOL Carryover 1979
$  38,662.75
1980
109,387.37
1981
123,630.16
1982
124,425.85
1983
127,527.11
1984
315,382.54
1985
373,537.13
In the notice, respondent disallowed the claimed NOL deductions for 1987 and 1988. The Internal Revenue Service (the Service) sent petitioners a letter (the 30-day letter) dated December 12, 1989, along with a revenue agent's report in which it proposed the following: *214 Proposed
Proposed
Year
Deficiency
Additions to Tax
1986
$  10,217
$  3,065
1987
135,718
30,474
1988
104,344
31,303
The foregoing proposed adjustments are not identical to the determinations set forth in the notice. OPINION Petitioners bear the burden of proving that respondent's determinations in the notice are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). They have attempted to satisfy their burden through testimonial and documentary evidence. Petitioner was the only witness. We found him to be glib, vague, evasive, and conclusory in his testimony. In these circumstances, we are not required to, and do not, accept his self-serving testimony. Estate of DeNiro v. Commissioner, 746 F.2d 327, 330-331 (6th Cir. 1984), affg. in part and remanding in part T.C. Memo. 1982-497; Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam T.C. Memo. 1970-335; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam *215 T.C. Memo. 1969-159; Sharwell v. Commissioner, 419 F.2d 1057, 1060 (6th Cir. 1969), affg. on this issue T.C. Memo. 1968-89; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners did not call any other witnesses to appear on their behalf. We may therefore presume that the testimony of other witnesses would not have been favorable to petitioners' position on the issues presented. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also Tokarski v. Commissioner, supra; Bresler v. Commissioner, 65 T.C. 182, 188 (1975). The principal issues in this case relate to whether petitioners are entitled to certain deductions claimed in Schedules C and F for each of the years at issue. Deductions are a matter of legislative grace, and a taxpayer seeking a deduction must meet every condition that Congress has imposed for entitlement to the deduction claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). *216 The principal statutory provisions applicable to the contested items are section 162 and, in the case of the claimed travel and entertainment expenses, section 274. Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Southeastern Canteen Co. v. Commissioner, 410 F.2d 615, 622 (6th Cir. 1969), affg. in part and revg. in part T.C. Memo. 1967-183; Quinn v. Commissioner, 65 T.C. 523, 526 (1975). In general, an expense is ordinary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495 (1940). Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); *217 Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Even if an expense is ordinary and necessary, it is deductible under section 162 only to the extent it is reasonable in amount. E.g., United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Commissioner v. Lincoln Electric Co., 176 F.2d 815, 817 (6th Cir. 1949), revg. a Memorandum Opinion of this Court dated Oct. 27, 1947. In deciding whether an expense is ordinary and necessary within the meaning of section 162, courts generally have focused on the existence of a reasonably proximate relationship between the expense and the taxpayers's business and the primary motive or purpose for incurring it. E.g., Greenspon v. Commissioner, 229 F.2d 947, 954-955 (8th Cir. 1956), affg. on this issue 23 T.C. 138 (1954); Henry v. Commissioner, 36 T.C. 879, 884 (1961); Larrabee v. Commissioner, 33 T.C. 838, 841-843 (1960). In general, where *218 an expenditure is primarily associated with profit-motivated purposes, and personal benefit can be said to be distinctly secondary and incidental, the expenditure may be deducted under section 162. E.g., International Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970); Sanitary Farms Dairy, Inc. v. Commissioner, 25 T.C. 463, 467-468 (1955); Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 73 (1950). Conversely, if an expenditure is primarily motivated by personal considerations, no deduction for it will be allowed. E.g., Henry v. Commissioner, supra; Larrabee v. Commissioner, supra.A taxpayer's general statement that his expenses were incurred in pursuit of a trade or business is not sufficient to establish that the expenses had a reasonably direct relationship to that trade or business. Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969). Taxpayers are required to maintain records that are sufficient to substantiate *219 claimed deductions. Sec. 6001. Under certain circumstances, where a taxpayer establishes his or her entitlement to a deduction, but does not establish the amount of that deduction, we are permitted to estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); see Cinelli v. Commissioner, 502 F.2d 695, 699 (6th Cir. 1974), affg. T.C. Memo. 1973-140. However, there must be sufficient evidence in the record to permit us to conclude that deductible expenses were incurred in at least the amount allowed. Otherwise, "relief to the taxpayer would be unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); see Luman v. Commissioner, 79 T.C. 846, 859 (1982). In the case of the claimed travel and entertainment expenses, section 274(d) overrides the so-called Cohan rule. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 *220 (Nov. 6, 1985). Under section 274, no deduction otherwise allowable is permitted for expenses incurred for travel or entertainment on the basis of any approximation or the unsupported testimony of the taxpayer. Under the stringent substantiation requirements of section 274(d), no deduction for travel or entertainment is allowed in the absence of adequate records or sufficient evidence corroborating the taxpayer's own statement. Thus, in order to be entitled to deduct otherwise deductible expenses for travel and entertainment, petitioners have the burden of substantiating (1) the amount of such expenses, (2) the time and place of the travel and entertainment, (3) the business purpose of the travel and entertainment, and (4) with regard to business meals, the business relationship with the person entertained. Sec. 274(d). In addition, for tax years beginning in 1987, entertainment expenses for food and beverages are limited to 80 percent of the amount otherwise deductible. Sec. 274(n)(1). With these general principles in mind, we now turn to the issues presented. 1. Section 7605(b)
We first consider petitioners' claim that the notice should be set aside because respondent *221 violated section 7605(b) in that the notice is based on information respondent obtained from a second inspection of petitioners' records after the issuance of the 30-day letter. Respondent contends that there is no evidence that she conducted two examinations of petitioners' records. Respondent further asserts that, even if two examinations had been conducted, there is no evidence that petitioners failed to consent to a second examination or that respondent failed to notify petitioners of that second examination. We agree with respondent. Section 7605(b) provides as follows: (b) RESTRICTIONS ON EXAMINATION OF TAXPAYER. -- No taxpayer shall be subjected to unnecessary examination or investigation, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
As we explained in Benjamin v. Commissioner, 66 T.C. 1084, 1098 (1976), affd. on other grounds 592 F.2d 1259 (5th Cir. 1979): Section 7605(b) was enacted to prevent abusive *222 and unnecessary inspections of a taxpayer's books and records by the tax collector. See United States v. Powell, 379 U.S. 48 (1964). The section was not designed to prevent the tax collector from diligently exercising his statutory duty of collecting the revenues. * * * Nor is section 7605(b) to be construed so as to defeat respondent's power under section 7602 to examine any books, papers, records, or other data that may be relevant or material in ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any tax or of any transferee or fiduciary of any person in respect of any tax, or collecting any such liability. See Grossman v. Commissioner, 74 T.C. 1147, 1155 (1980). Mere examination of a taxpayer's income tax return and accompanying schedules does not constitute a second inspection of that taxpayer's books within the meaning of section 7605(b). Id. at 1156. Moreover, if a second examination is made with the knowledge of a taxpayer who raises no objection to that examination, the taxpayer has waived the *223 requirement of written notice even though respondent uses the information she obtains for a purpose not anticipated by the taxpayer at the time the second examination was made. Rife v. Commissioner, 41 T.C. 732, 747 (1964), affd. on this issue 356 F.2d 883 (5th Cir. 1966); see Flynn v. Commissioner, 40 T.C. 770, 774 (1963). The record in the instant case does not explain the circumstances leading to the differences in the adjustments proposed in the 30-day letter and those set forth in the notice. Even assuming arguendo that those differences arose from a second examination of petitioners' books and records, there is no indication in the record that petitioners objected to the actions of respondent's agents or that petitioners had no knowledge of those agents' activities. Under such circumstances, we are not persuaded that petitioners did not know of, or consent to, that examination. See Rife v. Commissioner, supra; Flynn v. Commissioner, supra.
Based on the entire record, we hold that petitioners have not shown that they *224 did not waive the notice requirement of section 7605(b) or that respondent failed to comply with section 7605(b). [11] Accordingly, we conclude that section 7605(b) does not preclude respondent from making the determinations in the notice for each of the years at issue. *225 2. Claimed Miscellaneous Expense Deductions
Petitioners contend that the miscellaneous expenses they deducted in Schedule C for each of the years at issue are ordinary and necessary expenses that Mr. Rice incurred in the course of carrying on his law practice. They rely on petitioner's testimony and canceled checks in an effort to support their position. Respondent contends that the evidence offered by petitioners is not sufficient to entitle them to the deductions claimed for miscellaneous expenses. Respondent further asserts that some of those claimed expenses are personal in nature. We agree in large part with respondent. Petitioner testified in a general and conclusory manner that the miscellaneous expenses in question were ordinary and necessary expenses related to his law practice. He made no attempt to identify the exact nature or purpose of those expenses. Mr. Rice submitted no invoices or billing statements to corroborate his self-serving testimony that the expenditures reflected on the canceled checks on which petitioners rely relate solely to his law practice. Few of the canceled checks identify the purpose for which the checks were written. Some of them *226 appear on their face to be personal in nature or to relate to capital expenditures. [12] Others appear on their face to relate to other ventures in which petitioners were involved, rather than to Mr. Rice's law practice. We are unable to discern from our review of other checks the purpose for which they were written. Nonetheless, some of the checks on their face do appear to relate to Mr. Rice's law practice, viz., checks written to the Supreme Court of Ohio, the Cleveland Law Library Association, various reporting companies, *227 clerks of various courts, personnel services, and similar types of payees. It is not clear, however, whether a portion of those expenditures also relate to other ventures in which Mr. Rice was involved during the years at issue. Under such circumstances, we conclude that while petitioners have established that they are entitled to a deduction for each year at issue for certain miscellaneous expenses related to Mr. Rice's law practice, they have not established the amount of the allowable deduction for each such year. We therefore will estimate the amounts allowable for those years under the so-called Cohan rule, bearing in mind that any estimates we make should weigh heavily against petitioners because they are responsible for the deficiencies in the proof required to substantiate the claimed deductions. See Cohan v. Commissioner, 39 F.2d at 543-544. In making our determination of the deductible miscellaneous expenses for each of the years at issue, we relied only on those expenditures that appear to be directly related to Mr. Rice's law practice and for which checks were made part of the record. We have eliminated those checks that appear *228 personal in nature or that were made payable to cash, to individuals, such as petitioners' children, or to entities, unless a proximate relationship to Mr. Rice's law practice was apparent. In addition, in light of the various entities with which Mr. Rice and/or petitioners were involved during the years at issue and to which the expenditures could relate, we have significantly reduced the amounts reflected in the checks on which we have relied in order to account for payments which may be related to those other entities. Based on the entire record, we find that petitioners are entitled to deduct as miscellaneous expenses under section 162(a) $ 483, $ 463, and $ 347 for 1986, 1987, and 1988, respectively, and that petitioners have failed to establish that the balance of the deductions they claimed as miscellaneous expenses relating to Mr. Rice's law practice for each of those years qualifies under that section. 3. Claimed Travel and Entertainment Expense Deductions
Petitioners contend that for each of the years at issue Mr. Rice incurred travel and entertainment expenses in carrying on his law practice for which they are entitled to deductions. They rely on petitioner's *229 testimony and canceled checks in an effort to support their position. Respondent contends that the evidence offered by petitioners is inadequate to entitle them to the deductions claimed. Specifically, respondent asserts that some of the expense deductions in question were for personal expenses or were incurred in connection with petitioners' personal investments. Respondent further contends that, even if the expenditures were ordinary and necessary business expenses under section 162, petitioners have failed to meet the substantiation requirements of section 274. We agree with respondent. Petitioners have not established that the expenses claimed for travel and entertainment were directly related to Mr. Rice's law practice. Moreover, even assuming arguendo that petitioner's travel and entertainment expenses were deductible under section 162, the strict substantiation requirements of section 274 must be met before those expenses can be allowed as deductions. The only documentary evidence presented by petitioners to substantiate the claimed travel and entertainment expense deductions are canceled checks drawn on Mr. Rice's law practice account. Most of those checks are made *230 payable to cash, travel services, bank credit cards, country or other clubs, and similar types of payees. Petitioners did not introduce any contemporaneous account books, diaries, statements of expense, or similar records or documentary evidence that satisfy the requirements of section 274(d) and the regulations promulgated thereunder. Nor did petitioner's testimony at trial substantiate the amount of each expense, the time and place of the travel or entertainment, the business purpose of the expense, or the business relationship to petitioner of the person entertained. See sec. 1.274-5T(a) and (b), Temporary Income Tax Reg., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985). Mr. Rice testified in a very general manner about his travel and entertainment for the years at issue. His testimony did not contain specific information in detail as to the amount, time, purpose, and business relationship of each expenditure, and it was not accompanied by corroborative evidence as required by section 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46025 (Nov. 6, 1985). On the instant record, we conclude that petitioners have not established *231 that the claimed travel and entertainment deductions satisfy the requirements of section 162(a) or section 274(d). Accordingly, respondent's determination disallowing the claimed travel and entertainment expense deductions is sustained. 4. Cost of Computer
Petitioners contend that they purchased a computer during 1988 for use in the operation of their various business activities and that they therefore are entitled to expense its cost, rather than to depreciate it. They assert that they properly elected to deduct the cost of the computer for the year during which it was placed in service. Respondent contends that petitioners did not make any such election and that therefore they are not entitled to claim the entire cost of the computer as a deduction for 1988. We agree with respondent. Section 179(a) provides that a taxpayer may elect to treat the cost of any section 179 property as an expense that is not chargeable to a capital account. Section 179 property is defined in section 179(d)(1) as "any tangible property (to which section 168 applies) which is section 38 property and which is acquired by purchase for use in the active conduct of a trade or business." The *232 maximum amount generally that may be deducted as an expense under this section is $ 10,000. Sec. 179(b). Entitlement to the benefits of section 179 is not automatic; it requires that an affirmative election be attached to the original return or to a timely filed amended return. Sec. 179(a), (c); sec. 1.179-4(a), Income Tax Regs.; see LaPoint v. Commissioner, 94 T.C. 733, 735-736 (1990). The record contains no evidence that petitioners filed the appropriate section 179 election. Accordingly, petitioners are not entitled for 1988 to deduct the cost of the computer under that section. We will not, however, disturb respondent's concession that they are permitted to depreciate the cost of the computer on the basis determined by respondent, starting with the year 1988. 5. Claimed Horse Operation Expense Deductions
Petitioners contend that the expenses at issue that they deducted in Schedule F for each of the years at issue are ordinary and necessary business expenses incurred in carrying on their horse operation. Respondent contends that substantial portions of the expenses for which those deductions were claimed were not incurred as part of *233 petitioners' horse operation, but were personal expenses of petitioners or their children or were the expenses of related entities. Respondent further asserts that petitioners have failed to substantiate those claimed deductions that were related to their horse operation or to establish that such deductions were reasonable in amount. We agree in large part with respondent. In order to substantiate the deductions at issue that were claimed in the Schedules F for 1986, 1987, and 1988, petitioners rely on Mr. Rice's general and conclusory testimony that all of the expenditures underlying those deductions relate to the horse operation and on canceled checks and check register stubs, [13] *234 separated by year and for the most part grouped by the categories of expense (e.g., stud fees, training, interest) [14] used in the schedules attached to the Schedule F for each year. Those checks total $ 284,401.84, $ 288,391.15, and $ 116,075.45 for 1986, 1987, and 1988, respectively. [15] Petitioners introduced no invoices, billing statements, contracts, agreements, or similar types of corroborating evidence with respect to the checks. We find both Mr. Rice's testimony and the checks to be generally unreliable and suspect. By way of illustration with respect to Mr. Rice's testimony, he testified about the farm in general, and not about the specific deductions petitioners claimed in the Schedules F. When questioned by respondent about specific checks, Mr. Rice often could not explain their nature or purpose. He testified that during the years at issue Hobnobbin and three other unrelated parties owned a horse named Chairmanoftheboard. This testimony is inconsistent with papers filed with the USTA that show Mr. Rice and the other three parties as the joint and several owners of that horse. [16] Mr. Rice also testified inconsistently about the number of properties for which petitioners allegedly paid real estate taxes during 1987. *235 By way of illustration with respect to the checks, they generally do not disclose the purposes for which they were written, and there is no evidence in the record to furnish that information. Many of them were made out to cash or to one of petitioners' children or to other individuals whose relationship to petitioners' horse operation is not disclosed or apparent. Many were signed by one of petitioners' children or other individuals, none of whom was called to testify about the nature or purpose of the checks. We presume that their testimony would have been unfavorable to petitioners' position. E.g., Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165. In some instances, the checks indicate that petitioners deducted as business expenses in the Schedules F for the years at issue expenses that were personal in nature or that related to activities of their children and other entities in which petitioners were involved and that had no direct and proximate relationship to their horse operation. For example, for each of the years at issue, petitioners deducted all of the expenses for the house they used while at the farm, apparently including *236 carpeting for a daughter's room. They also deducted the expenses for the houses used by their sons, Dennis and Timothy, and their families. In addition, during 1986, petitioners paid the costs of remodeling the house used by Dennis and his family and apparently deducted those costs in the Schedule F for that year. Petitioners also paid hospitalization insurance premiums during the years at issue for Dennis and Timothy and possibly for petitioners' daughters Molly and Nora and deducted those payments as expenses in their Schedules F for those years. [17] Petitioners also included in the Schedule F for 1986 labor costs relating to Timothy's veterinarian operation and the cost of a workshop at Ohio State University, presumably attended by Timothy. In addition, petitioners deducted in the Schedule F for 1986 labor costs and insurance relating to the Inn at Hobnobbin Farm, the bed and breakfast inn operated by their daughters, Nora and Molly. Petitioners also deducted for 1986 the registration fee with the USTA for Top Flight Stable, a joint venture among petitioners and Mr. and Mrs. Adamsky, and possibly others. For 1988, petitioners deducted advertising for Brand New Fella, a horse *237 that petitioners owned jointly with others. In these circumstances, we generally placed very little, if any, weight on Mr. Rice's testimony, the checks, or petitioners' classification of the purposes for which the checks were written. With respect to petitioners' categorization *238 of those purposes, in only a few instances do the checks as grouped by petitioners equal the amounts claimed in the returns for those categories. Although the total of some categories of checks are reasonably close to the amounts claimed in the returns for those categories, other categories of checks are considerably less or greater than the amounts claimed. In addition, the names of certain of the same payees on some of the checks appear in different categories. For example, petitioners classified one check made payable to Blue Chip Farm as stud fees, while other checks to that same payee were classified as outside board and as advertising. To illustrate further, five checks made payable to Joe Adamsky were classified as training expenses, one check was classified as horse transport, one check was classified as licenses and dues, and another check had no identified category. Another example of the questionable classification by petitioners of the checks is found in numerous checks written during 1986, 1987, and 1988 totaling $ 10,886.53, $ 18,251.00, and $ 11,285.00, respectively, and made payable to Timothy. Petitioners classified all of those checks as veterinarian expenses. *239 The checks reveal that, commencing in September 1986, petitioners made payments in substantially equal amounts to Timothy almost always on a weekly basis. On their face, those checks do not appear to be payments to Timothy for services rendered. At trial, Mr. Rice admitted that the payments to Timothy were not based on the amount of veterinarian services that Timothy rendered for petitioners during the years at issue. After reviewing the entire record, we conclude that petitioners have not established that they are entitled to all of the deductions at issue. Nonetheless, we recognize that petitioners must have incurred some allowable business expenses, such as stud fees, training, licenses and dues, feed and bedding, seed and fertilizer, fuel and oil, utilities, telephone, supplies, and similar types of expenditures in conducting their horse operation. [18] Based on our review of the entire record, [19] using our best judgment, applying the Cohan rule, and weighing our judgment heavily against petitioners since they are responsible for the deficiencies in the proof herein, we find that, in addition to the amounts allowed by respondent, petitioners are entitled to deduct as *240 expenses relating to their horse operation for 1986, 1987, and 1988 the amounts of $ 37,058, $ 39,176, and $ 19,310, respectively, and are not entitled to any additional deductions claimed in Schedules F for those years. 6. NOL Deductions
Petitioners contend that they sustained NOLs for the years 1980 through 1985 that they are entitled to deduct as carryovers to 1987 and 1988. Respondent contends that petitioners are not entitled to the NOL deductions claimed because they presented no evidence to substantiate the claimed *241 NOL carryovers from 1980 through 1985. We agree with respondent and reject petitioners' argument that they do not need to substantiate those carryovers because the Service neither questioned nor audited their returns for those years and that therefore respondent accepted those carryovers as valid. See Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. on another issue 752 F.2d 1128 (6th Cir. 1985); cf. Warner v. Commissioner, 526 F.2d 1, 2 (9th Cir. 1975), affg. T.C. Memo. 1974-243 (payment of a refund does not estop the Commissioner from later determining a deficiency in the same year or any other year). Petitioners presented copies of their tax returns for 1980 through 1985 in support of the claimed NOL deductions for 1987 and 1988. [20] An entry on a tax return is not evidence that a loss has been incurred. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). A tax return is merely a statement of the taxpayer's claim and does *242 not establish the truth of the matters set forth therein. See Wilkinson v. Commissioner, supra; Robert v. Commissioner, supra.
*243 On the present record, petitioners have failed to sustain their burden of proving that they are entitled to any NOL deductions for 1987 and 1988. Consequently, respondent's disallowance of those deductions is sustained. 7. Additions to Tax
a. Section 6653(a)
Respondent determined that the entire underpayment of tax of each of the years 1986, 1987, and 1988 was due to negligence or intentional disregard of rules or regulations. Petitioners contend that they substantiated the expenses for 1986, 1987, and 1988 and that therefore there is no underpayment of tax for any of those years. Petitioners argue that they therefore are not liable for the additions to tax under section 6653(a) for those years. Respondent contends that petitioners intentionally failed to keep accurate books and records both for Mr. Rice's law practice and for the horse operation and to follow rules and regulations and that therefore petitioners are liable for the additions to tax under section 6653(a). We agree with respondent. For 1986 and 1987, section 6653(a)(1)(A) imposes an addition to tax of five percent of an underpayment of tax if any part of the underpayment is due to negligence or *244 intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. For 1988, section 6653(a)(1) imposes an addition to tax of five percent of an underpayment of tax if any part of the underpayment is due to negligence or disregard of rules or regulations. Negligence has been defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence is measured by an objective standard. Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531. Petitioners failed to keep adequate books and records to substantiate the miscellaneous and travel and entertainment expenses claimed in Schedule C and the expenses relating to their horse operation claimed in Schedule F for each of *245 the years at issue. [21] They presented no evidence to support their actions as being reasonable, prudent, or showing due care. On the instant record, we find that petitioners are liable for the additions to tax under section 6653(a) on the entire underpayment of tax for each of the years at issue. b. Section 6661(a)
Respondent determined that petitioners are liable for the addition to tax under section 6661(a) for each of the years at issue as a result of a "substantial understatement of income tax" for each of those years. Petitioners assert that there was no underpayment of tax for any of the years at issue and that they therefore are not liable for the addition to tax *246 under section 6661(a) for any of those years. Respondent contends that the evidence demonstrates that petitioners ignored all rules and regulations necessary to the proper determination of their tax liability and that there is no evidence that petitioners attempted to assess their proper tax liability. We agree with respondent. If there is a substantial understatement of income tax for any taxable year, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to the understatement. An understatement exists where the amount of tax shown on the taxpayer's return is less than the amount required to be shown on his or her return. Sec. 6661(b)(2)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Sec. 6661(b)(1)(A). Excepting items attributable to tax shelters, the amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Petitioners provided no evidence to show that *247 they had substantial authority for the understatements, and their tax returns did not disclose the relevant facts sufficient to enable respondent to identify the potential controversy involved. See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Instead, petitioners rested on the evidence they presented to prove that there were no deficiencies, reasoning that therefore there would be no additions to tax. As a general matter, we found the evidence relied on by petitioners to have been grossly insufficient and therefore have sustained respondent's determinations in large part. Accordingly, if, after the Rule 155 computation, there is a substantial understatement of petitioners' income tax within the meaning of section 6661 for any of the years at issue, respondent's determination under section 6661(a) will be sustained for each such year. To reflect concessions by the parties and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code or the Income Tax Regulations in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. References to petitioner in the singular are to John P. Rice, Jr.↩
3. For 1986, 1987, and 1988, Hobnobbin reported net losses on Forms 1065, U.S. Partnership Returns of Income (Forms 1065), of $ 108,040.34, $ 82,409.87, and $ 45,100.97, respectively.↩
4. Hobnobbin reported rental income from farm property on Forms 1065 for 1986, 1987, and 1988 in the amounts of $ 18,600, $ 18,600, and $ 18,000, respectively. Petitioners did not quantify the amount of taxes they paid during the years at issue that were attributable solely to Farm 3. Moreover, although petitioners reported gross royalties from gas wells in Schedules E of their returns for 1986, 1987, and 1988 of $ 33,989.32, $ 19,604.34, and $ 9,648.79, respectively, they did not identify the portion, if any, of those royalties attributable solely to Farm 3. Consequently, we cannot determine from the record the actual amount of rent that petitioners paid under their lease arrangement with Hobnobbin.↩
5. As described by the limited partnership agreement, the business of Chautauqua Partners is: (i) to acquire, own, invest in, develop, operate, manage, lease, sell and otherwise deal with for profit * * * [Farm 4], and (ii) to engage directly and indirectly by lease, royalty and drilling contract arrangements in oil and gas exploration, development and production on * * * [Farm 4] and to engage in any and all activities related or incidental thereto. The Partnership business shall be limited to * * * [Farm 4] (including the oil and gas business) * * *.↩
6. Manufacturing Mark I owned 90 percent of the stock of Pickwick Farms, Inc. which was involved primarily with the breeding and boarding of standardbred horses. It is not altogether clear when this stock interest was first acquired. Mr. Rice testified that it was owned by Manufacturing Mark I at least as early as 1988 and was still owned by it as of the date of the trial of this case.↩
7. Top Flight Stable is a joint venture among petitioners, Joe Adamsky (Mr. Adamsky), Mrs. Adamsky, and possibly others. During the years at issue, Top Flight Stable was involved in the training and racing of horses, and Mr. Adamsky trained horses for petitioners.↩
8. In the Schedule F for each of the years at issue, petitioners claimed deductions for depreciation, truck expenses, and other expenses in the following amounts: Deduction
1986
1987 1988 Depreciation
$  16,226.46
$  22,950.49
$  22,832.46
Truck
4,800.00
6,125.00
6,350.00
Other
241,076.60
267,350.28
254,992.08
Total
$ 263,103.06 *
$ 296,425.77
$ 284,174.54
* Petitioners made a $ 1,000 math error in totaling these figures. The correct amount is $ 262,103.06. For each of the years at issue, details of the other expenses were provided in schedules attached to the returns. Respondent did not adjust the depreciation deductions claimed in the Schedules F. Although not altogether clear, it appears that respondent did not adjust the truck expenses claimed in the Schedules F. Nor did respondent correct the $ 1,000 math error petitioners made in totaling the deductions claimed for 1986.↩
9. Respondent does not challenge under sec. 183 the deductions claimed in Schedules F for the years at issue. We therefore assume for purposes of this case that petitioners were engaged in the horse operation with the objective of making a profit.↩
10. The parties have not quantified the amounts of expenses deducted in Schedules F for the years at issue relating to those houses.↩
11. Consequently, we need not address whether invalidation of the notice is the proper remedy for such violation. Compare Moloney v. United States, 521 F.2d 491, 500 (6th Cir. 1975) ("We agree with the view of the Court of Claims that 'not every infraction of the notice requirement calls for nullification of the deficiency assessment.'", citing Field Enterprises, Inc. v. United States, 172 Ct. Cl. 77, 87, 348 F.2d 485, 491 (1965)), with Reineman v. United States, 301 F.2d 267, 272↩ (7th Cir. 1962) ("Under the facts of this case, taxpayers are left without any remedy to correct the illegal action taken by the Commissioner unless the deficiency assessment is set aside.").
12. Assuming arguendo that the capital expenditures were related to Mr. Rice's law practice, they generally would be subject to depreciation under secs. 167 and 168 as recovery property. However, in light of the various entities and ventures with which petitioners were involved during the years at issue, and an apparent propensity on their part to claim personal expenses as business expenses, we are unable to determine whether those expenditures actually were related to Mr. Rice's law practice.↩
13. Hereinafter, for convenience, we will use the word check to refer to either a canceled check or a check register stub.↩
14. In certain instances, no category was specified.↩
15. For 1986 and 1987, the checks total more than, and, for 1988, less than, the deductions identified as "other expenses" that were claimed in the Schedules F for those years.↩
16. Hobnobbin claimed depreciation deductions with respect to Chairmanoftheboard in Schedules F filed with Forms 1065 for 1987 and 1988 relating to a stud services business operated by Hobnobbin. Hobnobbin reported no income in those Schedules F from the stud services business.↩
17. Petitioners contend that Dennis provided labor services and that Timothy provided veterinarian services to petitioners relating to the horse operation during the years at issue and that they paid for those services by paying expenses associated with the farm houses occupied by Timothy and Dennis, such as insurance, utilities, telephone, and real estate tax bills. Petitioners did not call either son to testify as to the extent of services, if any, that they performed for Hobnobbin Farm, and we assume that their testimony would not have been favorable to petitioners' position. E.g., Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).
18. Indeed, in the notice, respondent allowed petitioners' deductions for some of those types of expenses.↩
19. In examining the record, we focused on the names of the payees on the checks, contemporaneous notations, if any, on them, the endorsements appearing on the back of the checks, and other evidence, scant as it is, in order to determine whether petitioners may deduct any expenses relating to their horse operation for the years at issue in excess of the amounts allowed by respondent.↩
20. Respondent apparently audited petitioners' 1979 tax return in which they reported an NOL and made certain adjustments to the items reported in that return. As a result, petitioners agreed that there was no NOL for 1979 and that their corrected adjusted gross income for that year was $ 32,626.87. After making certain adjustments totaling $ 2,222.40, respondent allowed petitioners to carry back to 1979 $ 34,849.27 of the $ 70,724.62 NOL petitioners claimed for 1980, leaving $ 35,875.35 of the 1980 NOL available to be carried forward to subsequent years. See sec. 172. It is not clear whether respondent audited petitioners' 1980 tax return. Even if respondent had audited the 1980 return and determined that petitioners were entitled to the $ 35,875.35 carryforward from that year, petitioners have not established that the 1980 carryforward would not have been fully absorbed by the end of 1986.↩
21. We find incredulous the statement of Mr. Rice, who is authorized to practice before this Court, that he was not aware, at least generally, of the requirements to maintain receipts for travel and entertainment expenditures and that he believed he "was entitled to deduct a certain amount" without substantiation when he traveled overnight.↩