T.C. Memo. 1996-416


UNITED STATES TAX COURT


LANCE BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16827-93.                    Filed September 17, 1996.


<u>George M. Nachwalter</u>, for petitioner.

<u>Alison W. Lehr</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(b)(1)(A)</u> | <u>6653(b)(1)(B)</u> | <u>6661(a)</u> |
| 1986 | $ 6,790 | $ 5,298 | * | $1,698 |
| 1987 | 17,459 | 13,731 | * | 4,365 |

> \* 50 percent of interest due on portion of
> underpayment attributable to fraud.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1986 and 1987, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the only issue for decision is whether petitioner is liable for the fraud additions to tax.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Fort Lauderdale, Florida.

During 1986 and 1987, petitioner was engaged in business as a self-employed loan broker. Petitioner's business involved arranging for loans between finance companies and small business borrowers. On loans he arranged, petitioner typically received commissions from finance companies and fees from borrowers.

During 1986 and 1987, petitioner received total commissions from finance companies of $28,695 and $22,086, respectively, and total fees from borrowers of $3,553 and $15,080, respectively.

Except for one finance company, none of the finance companies from whom petitioner received commissions in 1986 and 1987 issued to petitioner Forms 1099 reflecting commissions paid to petitioner.

Petitioner maintained two bank accounts at Amerifirst Bank (Amerifirst), one in his name and one in his son's name, and petitioner maintained one bank account at Commercial Bank & Trust Co. (Commercial Bank) in his name. Petitioner generally deposited commissions and fees received in his loan brokerage business into these bank accounts.

In connection with preparation of his 1986 Federal income tax return, petitioner submitted to his tax return preparer a letter dated February 21, 1987, in which petitioner indicated that he received in 1986 only $10,482 in total commissions and fees from his loan brokerage business. This total commission and fee income of $10,482, along with net income of $2,227, and zero taxable income, were reported on petitioner's 1986 Federal income tax return.

On March 15, 1988, respondent's revenue agent began an audit of petitioner's 1986 Federal income tax return. During the audit, petitioner did not keep scheduled appointments with respondent's revenue agent, and petitioner provided only limited records to the revenue agent with regard to his loan brokerage business.

On April 20, 1988, as a result of his inability to meet with petitioner and petitioner's general lack of cooperation, respondent's revenue agent proposed audit adjustments against petitioner in which the revenue agent disallowed $8,332 in various claimed business expenses and proposed the negligence

addition to tax.  Petitioner did not agree to these proposed adjustments to his 1986 Federal income tax return.

After respondent's revenue agent proposed the above adjustments, petitioner submitted to respondent portions of a bank statement relating to the Amerifirst account that was in petitioner's name.  Petitioner did not provide to respondent's revenue agent bank statements relating to the other two bank accounts.

In the summer of 1988, after petitioner rejected the above proposed audit adjustments for 1986, respondent's revenue agent mailed to petitioner a second letter in which the revenue agent reasserted the initial adjustments and addition to tax and proposed to disallow an additional $846 in claimed business expenses.  Again, petitioner refused to agree to respondent's proposed adjustments.

On November 10, 1988, in response to a summons from respondent's revenue agent, petitioner and petitioner's attorney met with respondent's revenue agent.  During this meeting, petitioner provided respondent's revenue agent with a schedule on which petitioner indicated that he received $26,806 in total commissions and fees in 1986.  At this meeting, petitioner acknowledged the second bank account at Amerifirst in his son's name, but petitioner did not acknowledge that he also maintained the bank account at Commercial Bank.  The November 10, 1988,

meeting was the only meeting between petitioner, his attorney, and respondent's revenue agent.

After the above November 10, 1988 meeting, respondent's revenue agent considered making a fraud referral with regard to petitioner's original 1986 Federal income tax return. Respondent's revenue agent, however, did not make a fraud referral at that time because she did not believe that she had firm evidence of fraud.

On December 9, 1988, in connection with preparation of his 1987 Federal income tax return, petitioner met with a tax return preparer different from the preparer used for his 1986 tax return. Petitioner indicated to this return preparer that he received in 1987 $20,316 in total commissions and fees from his loan brokerage business. These commissions, along with net income of $6,874, and zero taxable income, were reported on petitioner's 1987 Federal income tax return that was filed on December 30, 1988.

On January 4, 1989, respondent's revenue agent notified petitioner that petitioner's 1987 Federal income tax return was to be audited. On January 27, 1989, petitioner filed an amended 1987 Federal income tax return and reported thereon additional commissions and fees received in 1987 of $10,188 and an increase in tax liability of $3,307.

On February 10, 1989, petitioner provided respondent's revenue agent with a schedule on which petitioner indicated that he received $31,503 in total commissions and fees in 1987.

As indicated above, petitioner actually received in 1987 a total of $37,166 in commissions and fees.

By March of 1989, respondent's revenue agent believed that firm evidence of fraud had been established with respect to petitioner's 1986 and 1987 Federal income tax returns, and on March 13, 1989, the revenue agent made a fraud referral to respondent's Criminal Investigation Division.

On March 19, 1992, petitioner was criminally indicted on two counts of willfully filing false Federal income tax returns for 1986 and 1987.  On April 28, 1992, based upon his guilty plea, petitioner was convicted under section 7206(1) of willfully filing a false 1987 Federal income tax return.  In exchange for his guilty plea, the United States agreed to dismiss the other count of the indictment relating to petitioner's 1986 Federal income tax return.

Prior to trial herein, petitioner and respondent agreed that for 1986 and 1987, petitioner is liable for income tax deficiencies of $6,247 and $5,638, respectively, and additions to tax for substantial understatements of income tax under section 6661(a) for 1986 of $1,501.

The following table sets forth petitioner's gross income as reported on petitioner's original 1986 and 1987 Federal income

tax returns, on petitioner's 1987 amended Federal income tax return, and as now agreed to by petitioner and respondent.

| | Gross Income | | |
| Year | As Reported On Original Returns | As Reported On Amended Return | As Agreed To |
|---|---|---|---|
| 1986 | $10,482 | -- | $32,248 |
| 1987 | 20,316 | $30,504 | 37,166 |

OPINION

For 1986 and 1987, additions to tax for fraud are equal to 75 percent of the portion of an underpayment that is attributable to fraud, plus an amount equal to 50 percent of interest payable under section 6601 with respect to such portion. Sec. 6653(b)(1) and (2).

The existence of fraud involves a question of fact. Parks v. Commissioner, 94 T.C. 654, 660 (1990); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent must establish by clear and convincing evidence that there was an underpayment of tax and that the underpayment was due to the taxpayer's fraudulent intent. Sec. 7454; Rule 142(b); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 515 (1992).

Fraudulent intent is defined as "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976).

Fraud is never to be imputed or presumed. However, "its proof may depend to some extent upon circumstantial evidence, and may rest upon reasonable inferences properly drawn from the evidence of record." Stone v. Commissioner, 56 T.C. 213, 224 (1971); see Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Courts have developed several objective "badges" of fraud. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). These badges of fraud include: (1) Dealings in cash; (2) inadequate records; (3) concealment of assets; (4) understatement of income; and (5) failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307-309 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, supra at 910; Paschal v. Commissioner, T.C. Memo. 1994-380, affd. without published opinion __ F.3d __ (3d Cir., Oct. 4, 1995).

Petitioner concedes that he underreported his Federal income taxes for 1986 and 1987. Thus, we need only decide whether petitioner's underreporting was due to fraudulent intent.

Petitioner argues that his underreporting in tax was not intentional and that it was caused by carelessness of his tax return preparers. In addition, petitioner argues that respondent's revenue agent improperly examined his Federal income tax return and his books and records for 1986 three separate times without giving the written notice required by section

7605(b).  Petitioner argues further that by failing to refer petitioner's case to respondent's Criminal Investigation Division when the revenue agent initially suspected fraud, respondent's revenue agent violated petitioner's rights under the Fourth and Fifth Amendments.  Because of respondent's alleged violation of proper audit procedures and because petitioner's constitutional rights were allegedly violated, petitioner argues that he should be relieved of any fraud additions to tax for 1986 and 1987.

We disagree.  In filing his erroneous 1986 and his erroneous 1987 original and amended Federal income tax returns and through his conduct during the course of respondent's audit, petitioner repeatedly demonstrated an intent to fraudulently underreport his Federal income taxes for 1986 and 1987.  Comparing gross income as reported on petitioner's original tax returns to gross income as agreed to by petitioner herein, petitioner underreported his gross income by approximately $21,766 for 1986 and by approximately $17,000 for 1987.

During the audit, petitioner generally refused to cooperate with, and made material misrepresentations to, respondent's revenue agent.  Petitioner pleaded guilty to filing a materially false Federal income tax return for 1987.  Although his conviction for this year does not conclusively establish his liability for the fraud additions to tax for 1986 and 1987, it does collaterally estop petitioner from denying that he willfully and knowingly filed a false Federal income tax return for 1987,

and it remains relevant as further evidence to consider. See
Wright v. Commissioner, 84 T.C. 636 (1985); Castillo v.
Commissioner, 84 T.C. 405, 409-410 (1985); Curry v. Commissioner,
T.C. Memo. 1991-102; Whyte v. Commissioner, T.C. Memo. 1986-486,
affd. 852 F.2d 306 (7th Cir. 1988).

Petitioner's claim that the underreporting of income was
caused by his tax return preparers is not supported by the
evidence. For both 1986 and 1987, petitioner disclosed
inaccurate information to his tax return preparers, and
petitioner is not allowed to now shift to his return preparers
responsibility for his failure to accurately report his income.
Alexander Shokai, Inc. v. Commissioner, 34 F.3d 1480, 1486 (9th
Cir. 1994), affg. T.C. Memo. 1992-41; United States v. Claiborne,
765 F.2d 784, 798 (9th Cir. 1985).

Petitioner argues that the revenue agent's initial proposal
of the negligence addition to tax for 1986 indicates that the
evidence does not support a finding of fraud. At that time,
however, respondent's agent was not aware that petitioner had
failed to disclose various bank accounts and the correct amount
of commissions and fees received in 1986 and 1987. Only after
respondent's revenue agent discovered the additional bank account
and the additional unreported income did respondent's revenue
agent make the fraud referral.

Petitioner argues that because his amended 1987 Federal
income tax return reported income over and above income that was

reported on the original 1987 return, he should not be held liable for the fraud addition to tax for 1987.  A taxpayer's fraudulent original return, however, is not purged by the filing of a subsequent amended return.  The fraud was committed when the original return was prepared and filed.  Badaracco v. Commissioner, 464 U.S. 386, 394 (1984).  Petitioner amended his 1987 Federal income tax return only after being notified that the return would be audited, and even then petitioner underreported on the amended 1987 Federal income tax return his income by approximately $5,600.

As indicated, petitioner argues that respondent audited petitioner's 1986 books and records three times without providing the written notice to petitioner required under section 7605(b) and therefore that the notice of deficiency should be treated as invalid with regard to the fraud addition to tax for 1986.  In general, a taxpayer's books and records are subject to only one examination per year unless respondent notifies the taxpayer in writing that an additional examination is necessary.  Sec. 7605(b).  A taxpayer, however, may waive this requirement by failing to object to a subsequent examination without receiving the written notice called for in section 7605(b).  Rife v. Commissioner, 41 T.C. 732, 746-747 (1964), revd. and remanded on another issue 356 F.2d 883 (5th Cir. 1966); Rice v. Commissioner, T.C. Memo. 1994-204; Anderson v. Commissioner, T.C. Memo. 1989-472.  Assuming, without so finding, that a second or even third

examination of petitioner's books and records occurred in this case, we conclude that petitioner never timely objected thereto, and petitioner thereby waived his rights under section 7605(b).

Relying on United States v. Tweel, 550 F.2d 297 (5th Cir. 1977) and United States v. Grunewald, 987 F.2d 531 (8th Cir. 1993), petitioner argues that respondent's revenue agent unduly delayed in making the fraud referral to respondent's Criminal Investigation Division, that petitioner's Fourth and Fifth Amendment rights were thereby violated, and that the fraud additions to tax should be rejected.

We disagree. Respondent's continued investigation of petitioner after the revenue agent initially suspected fraud did not violate petitioner's constitutional rights. See United States v. Grunewald, supra. There is no credible evidence in the record that would support a finding that respondent's revenue agent improperly received information as a result of any misrepresentations or improper conduct by the revenue agent.

Based on the evidence before us, we conclude that petitioner fraudulently underreported his Federal income taxes for 1986 and 1987 and that petitioner is liable for the fraud additions to tax for 1986 and 1987.

Decision will be entered

under Rule 155.