DOROTHY LAPOINT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8797-87.          Filed May 23, 1990.

Dorothy LaPoint, pro se.
*Ann Murphy,* for the respondent.

JACOBS, *Judge:* Respondent determined a deficiency of $8,214.58 in petitioner's 1983 income tax.

After concessions, the issues for decision are: (1) The characterization of certain renovations which petitioner made to 3 of her 13 rental properties (i.e., whether said renovations constituted repairs or capital improvements); (2) whether petitioner is entitled to an investment tax credit with respect to an automobile used in connection with her

rental activities; and (3) whether petitioner is liable for the alternative minimum tax under section 55.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

Petitioner resided in Castro Valley, California, at the time she filed her petition. She was employed by the Department of Housing and Urban Development in its San Francisco office.

Petitioner owned 13 rental properties located in the Bay area. She made the following renovations to three of these properties in 1983:

| Property | Item | Cost |
|---|---|---|
| Newton Street | Replaced furnace | $997 |
| Newton Street | Erected fence | 234 |
| Newton Street | Replaced roof | 3,697 |
| Dixon Street | Fixtures for bathroom and kitchen | 778 |
| Dixon Street | Installed drapes | 152 |
| LaPorte | Installation of garage door, greenhouse, window, sink and counter, flooring, and carpeting | 2,780 |
| Total | | [2]8,638 |

Petitioner deducted these expenditures on her 1983 tax return as repairs; respondent determined that said expenditures constituted capital improvements which should be depreciated rather than expensed.

Petitioner made the renovations to her Dixon Street and LaPorte properties in anticipation of selling said properties, which she in fact did in 1983. The sale of these two properties resulted in a long-term gain in the approximate amount of $145,000. Primarily as a result of the capital gain deduction taken by petitioner on her 1983 return, respondent determined that petitioner was liable for the alternative minimum tax which she failed to compute in calculating her 1983 tax obligation.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the tax year in issue.

[2] Respondent disallowed deductions for "replacements" in the aggregate amount of $8,611, whereas the actual costs for the renovations total $8,638. No explanation was given as to the $27 discrepancy.

On October 16, 1983, petitioner purchased a 1983 BMW to replace her 1975 Buick. Claiming that the BMW was used in connection with her rental activities (specifically, to inspect and maintain the properties), petitioner deducted automobile expenses and depreciation and claimed entitlement to an investment tax credit. At trial, the parties agreed that the BMW was used by petitioner 85 percent of the time for business; thus, respondent concedes petitioner's entitlement to the claimed deductions for automobile expenses and depreciation. However, respondent still disputes petitioner's entitlement to the investment tax credit.

OPINION

We first decide the proper characterization of the renovations made in 1983 by petitioner, i.e., whether the expenditures were for repairs deductible as ordinary and necessary business expenses under section 162 or capital expenditures which must be depreciated.

Capital expenditures are those expenses which add to the value or substantially prolong the useful life of the property. Sec. 1.263(a)-1(b), Income Tax Regs. Expenses for incidental repairs or maintenance are currently deductible (and are not capital expenditures) if they neither materially add to the value of the property nor appreciably prolong the property's useful life. Sec. 1.162-4, Income Tax Regs.

The renovations made to the Dixon Street and LaPorte properties are capital expenditures made in connection with the sale of said properties. As such, the expenditures, while not currently deductible, increase petitioner's basis in the properties and reduce the amount of gain petitioner realized from the sale of said properties. The expenses incurred in connection with renovations to the Newton Street property are capital expenditures.

Petitioner contends that the expenditures are deductible under section 179. (Section 263(a)(1)(H) provides an exception to the general rule which otherwise denies a deduction for capital expenditures for which a deduction is allowed under section 179.)

Section 179 permits a taxpayer to *elect* to treat the cost of section 179 property as an expense, within certain dollar limitations. To avail himself/herself of the benefits of

section 179, the taxpayer must make an irrevocable election on his/her income tax return. Sec. 179(a) and (c). Petitioner did not make the requisite election; therefore, the renovation expenditures are not deductible under section 179.

We next decide whether petitioner is entitled to an investment tax credit with respect to the BMW purchased in 1983. An investment tax credit is allowed for qualified investment in section 38 property. See sec. 46. Section 38 property generally includes depreciable tangible personal property. Sec. 48(a)(1). Section 48(a)(3) provides, with exceptions not relevant here, that "Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property."

Respondent contends that petitioner used the BMW in connection with the furnishing of lodging, and therefore, the BMW is not section 38 property. See Rev. Rul. 78-439, 1978-2 C.B. 11. We agree.

The investment tax credit enacted in 1962 contained the lodging exception found in section 48(a)(3). Revenue Act of 1962, sec. 2(b), Pub. L. 87-834, 76 Stat. 960, 963-970. The rationale for the lodging exception was stated in the Joint Committee on Taxation's General Explanation of the Revenue Act of 1961: "Lodging, or residential real estate, * * * [is] excluded on the grounds that this property for the most part is used by consumers rather than in production." Staff of Joint Comm. on Taxation, General Explanation of Committee Discussion Draft of Revenue Bill of 1961, 87th Cong., 1st Sess. 9 (J. Comm. Print 1961).[3]

The regulations under section 48 provide that property which is used predominantly in the operation of a lodging facility or in serving tenants shall be considered used in connection with the furnishing of lodging. Sec. 1.48-1(h)(1)(ii), Income Tax Regs. As examples of property used in connection with the furnishing of lodging, section 1.48-1(h)(1)(ii) lists lobby furniture, office equipment, and laundry and swimming pool facilities used in the operation of an apartment house or in serving tenants.

Tax credits, like deductions, are a matter of legislative

---

[3]That draft contained language identical to that which was eventually enacted in the Revenue Act of 1962. See Revenue Act of 1961, sec. 2(b), Discussion Draft 12 (J. Comm. Print 1961).

grace. *Segel v. Commissioner,* 89 T.C. 816, 842 (1987). Petitioner used her BMW to inspect and maintain her rental properties. The rental properties were lodging facilities. Sec. 1.48-1(h)(1)(i), Income Tax Regs.

The statutory language "Property * * * used * * * in connection with the furnishing of lodging" is more encompassing than property used or available for use by a tenant; it includes property used in connection with the operations of rental property, such as an automobile used by a landlord to inspect and repair rental property. Accordingly, in the instant case, the BMW is not section 38 property; hence, petitioner is not entitled to the claimed investment tax credit.

Finally, we decide whether petitioner is liable for the alternative minimum tax under section 55. In 1983, petitioner recognized a net long-term capital gain as a result of the sale of the La Porte and Dixon Street properties. The net long-term capital gain entitled petitioner to take the 60-percent deduction for capital gains provided in section 1202.

Section 55 imposes an alternative minimum tax on noncorporate taxpayers to the extent that 20 percent of the excess of the taxpayer's "alternative minimum taxable income" over an exemption amount exceeds the taxpayer's regular tax. In general, a taxpayer's "alternative minimum taxable income" is calculated using the taxpayer's adjusted gross income as a base figure. Sec. 55(b). Items of tax preference under section 57 are then added to the base figure. Sec. 55(b)(2). In the case of a noncorporate taxpayer (such as petitioner), the amount of the section 1202 net capital gain deduction is a tax preference item. Sec. 57(a)(9).

In the instant case, to the extent that 20 percent of the excess of petitioner's alternative minimum taxable income over her exemption amount exceeds her regular tax, petitioner will be liable for the alternative minimum tax. The precise amount of petitioner's liability under section 55, if any, can be determined in the parties' Rule 155 computation.

To reflect the foregoing and the concessions of the parties,

*Decision will be entered under Rule 155.*