SANG J. PARK & WON KYUNG O, PETITIONERS *v*.
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

SANG J. PARK, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 14159–09, 30063–09.      Filed June 13, 2011.

P, a South Korean national and nonresident alien, had U.S. gambling winnings and interest income that was not effectively connected with a U.S. trade or business. *Held*: The Treaty of Friendship, Commerce and Navigation, U.S.-S. Kor.,

art. XI, par. 5(b), Nov. 28, 1956, 8 U.S.T. 2217, provides exceptions to the most-favored-nation treatment under art. XI, par. 3 and thus does not extend to South Korean nationals the more favorable treatment regarding exemption from U.S. income tax of gambling winnings as provided for in some bilateral income tax treaties that the United States has entered into with other foreign countries. *Held*, *further*, P's gambling activities were not personal services or a U.S. trade or business; thus the gambling income is not considered income that is effectively connected with a U.S. trade or business and is taxable under I.R.C. sec. 871(a). *Held*, *further*, the interest income reported by a third-party U.S. national bank is excluded from Federal income tax under I.R.C. sec. 871(i)(1) and (2) as income from bank deposits. Ps have not shown that the remaining interest income is from deposits that qualify for U.S. tax exemption under I.R.C. sec. 871(i). *Held*, *further*, Ps are liable for the accuracy-related penalties under I.R.C. sec. 6662(a) and (b)(1) or (2).

*Denis M. McDevitt*, for petitioners.
*Erin K. Salel*, for respondent.

## OPINION

COHEN, *Judge*: In these consolidated cases, respondent determined a deficiency of $134,350 in income tax and an accuracy-related penalty of $20,774 with respect to the jointly filed 2006 Federal income tax return of Sang J. Park (petitioner) and Won Kyung O (petitioner wife) and a deficiency of $23,821 in income tax and an accuracy-related penalty of $4,438 with respect to petitioner's 2007 income tax return. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner's 2006 and 2007 gambling winnings are subject to tax under section 871(a); (2) whether petitioner's gambling income is effectively connected with a U.S. trade or business; (3) whether the interest income earned in 2006 and 2007 is subject to tax; and (4) whether the section 6662(a) accuracy-related penalties imposed should be sustained.

## Background

These cases were submitted fully stipulated under Rule 122. The stipulated facts are incorporated as our findings by this reference. Petitioners are married and are citizens and residents of the Republic of South Korea (South Korea) and had South Korean passports during the years at issue. Petitioners were nonresident aliens in 2006 and 2007, i.e., they were not citizens of the United States, and neither had a permanent resident card (green card). Petitioner has a Social Security number that he obtained while attending college in the United States in the mid-1970s.

Petitioner works as a full-time, high-ranking business executive for a large chemical company in South Korea. Petitioner's employer pays for petitioners' son to attend school in the United States and for petitioners to travel to the United States to visit their son. Petitioner wife also has other family living in the United States.

During the years in issue, petitioners traveled to the United States for vacation and to visit family a number of times. Petitioner enjoys gambling, and during these trips he frequented the Pechanga Resort & Casino (Pechanga) in Temecula, California, to play the slot machines. Petitioner gambled at Pechanga on 20 of the approximately 68 days that he was in the United States in 2006 and on 11 of the approximately 46 days that he was in the United States in 2007. With respect to the gambling activity, petitioner did not have a business plan and did not keep books and records. Petitioner did not use for gambling money that was needed to support his family. Petitioner wife had no involvement in any gambling or gaming activities.

In 2006, petitioner won 138 slot machine jackpots of $1,200 or more, with total gambling winnings of $431,658. Pechanga withheld 30 percent of the winnings for payment of Federal income tax on three of those jackpots (two jackpots of $50,000 and one of $1,600), for a total of $30,480 withheld for taxes. A report prepared by Pechanga showed that petitioner had losses that exceeded his 2006 winnings by $4,663.

On February 18, 2007, petitioner provided his Social Security number to Pechanga and signed a Form W–9, Request for Taxpayer Identification Number and Certification, certifying that he was not subject to backup withholding and that

he was a U.S. person (including a U.S. resident alien). In 2007, petitioner won 43 slot machine jackpots of $1,200 or more, with total gambling winnings of $103,874. Pechanga withheld 30 percent of the winnings for payment of Federal income tax on three jackpots (jackpots of $2,620, $1,440, and $1,380), for a total of $1,632. A report prepared by Pechanga showed that petitioner had losses that exceeded his 2007 winnings by $45,130.50.

Petitioner received from sources within the United States other income that was not effectively connected with a U.S. trade or business in 2006: (1) Interest income of $6,585; (2) capital gain income of $52,792; and (3) dividend income of $7,471 (taxable at a rate of 15 percent under the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect To Taxes on Income and the Encouragement of International Trade and Investment, U.S.-S. Kor., art. 12, par. (2)(a), June 4, 1976, 30 U.S.T. 5253 (U.S.-Korea income tax treaty)). Petitioner wife had no U.S. source income.

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for 2006 as married filing jointly, prepared by a bookkeeping service. Petitioners did not report any gambling winnings or any associated expenses. They did report petitioner's other U.S. source income. The payer of the interest income was listed as Bank of America.

In 2007, petitioner also received from sources within the United States income that was not effectively connected with a U.S. trade or business: (1) Interest income of $11,830 and (2) dividend income of $3,046 (taxable at a rate of 15 percent under the U.S.-Korea income tax treaty, art. 12, par. (2)(a)).

Petitioner filed a Form 1040 for 2007 and reported the interest and dividend income from sources within the United States, but he did not report the gambling income or any associated expenses. The payer of $11,662 of interest income was listed as "FEDL HOME LOAN BK CONS DISC". Petitioner's 2007 return was prepared by a certified public accountant.

Pechanga reported petitioner's jackpot winnings of $1,200 or more to the Internal Revenue Service (IRS) on completed Forms W–2G, Certain Gambling Winnings, for 2006 and 2007. The IRS examined the 2006 and 2007 tax returns and determined that petitioner received unreported gambling income of $431,658 in 2006 and $103,874 in 2007. The IRS

did not receive reporting from third parties with respect to the interest income of $6,585 and $11,662, as reported on the 2006 and 2007 tax returns, respectively. However, the IRS made adjustments to the interest income as reported on the 2007 return to reflect information reported from third parties: (1) $4 less $1 withholding from Wells Fargo Bank, N.A. (a U.S. national bank chartered and regulated by the Office of the Comptroller of the Currency) and (2) $165 from First Clearing, L.L.C. The IRS sent a notice of deficiency to petitioners on March 23, 2009, for determined deficiencies and an accuracy-related penalty with respect to 2006. On November 9, 2009, the IRS sent a notice of deficiency to petitioner for determined deficiencies and an accuracy-related penalty with respect to 2007.

The parties agree that petitioners are nonresident aliens and that for both 2006 and 2007 Forms 1040 were erroneously filed instead of Forms 1040NR, U.S. Nonresident Alien Income Tax Return.

## *Discussion*

Gambling winnings, including slot machine winnings, are gross income. See sec. 61; *United States v. Monteiro*, 871 F.2d 204, 206 (1st Cir. 1989); *Johnston v. Commissioner*, 25 T.C. 106, 107–108 (1955). In general, "interest * * *, dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income" that are received by a nonresident alien from sources within the United States and that are not effectively connected with a U.S. trade or business are subject to a 30-percent tax. Sec. 871(a)(1). Gambling winnings paid to a nonresident alien fall within this provision, with limited exceptions. See sec. 871(j); *Abeid v. Commissioner*, 122 T.C. 404, 406–407 (2004); *Barba v. United States*, 2 Cl. Ct. 674, 675–678 (1983). The parties agree that petitioner's U.S. gambling winnings are considered U.S. source income.

Generally, a recreational or casual gambler's gross income from a wagering transaction should be calculated by subtracting the bets placed to produce the winnings, not as a deduction in calculating adjusted gross income or taxable income but as a preliminary computation in determining

gross income. See *Lutz v. Commissioner*, T.C. Memo. 2002–89. A recreational gambler who plays the slot machines recognizes a wagering gain or loss at the time tokens are redeemed and the taxpayer can definitely calculate the amount above or below basis (the wager) realized. See *Shollenberger v. Commissioner*, T.C. Memo. 2009–306.

Section 6001 and the regulations thereunder require taxpayers to keep permanent records sufficient to substantiate the amounts of income, deductions, and credits shown on their tax returns. Sec. 1.6001–1(a), Income Tax Regs. Petitioner did not keep books and records with respect to his gambling activities. Petitioner's slot machine jackpot winnings of $1,200 or more for the years in issue are included in the record, but petitioners have not supplied evidence with respect to the wagering money used to generate the winnings on a per-session basis or otherwise.

A nonresident generally cannot deduct or offset gambling losses against gambling winnings. See sec. 873; *Barba v. United States*, *supra*; cf. sec. 165(d); *Shollenberger v. Commissioner*, *supra* (gambling losses other than in the trade or business of gambling are allowable, if at all, as itemized deductions in calculating taxable income); *Mack v. Commissioner*, T.C. Memo. 1969–26 (gambling losses incurred other than in the trade or business of gambling are allowable for U.S. citizens or aliens residing in the United States to the extent of the gambling winnings), affd. 429 F.2d 182 (6th Cir. 1970). Thus, a nonresident alien who is not engaged in gambling as a business within the United States is subject to tax under section 871(a)(1) on gross income from gambling without a deduction for gambling losses.

When gambling winnings of $1,200 or more from a bingo game or slot machine play are paid, the payer is required to inform the IRS of the payments. See sec. 6041(a); sec. 7.6041–1(a), Temporary Income Tax Regs., 42 Fed. Reg. 33286 (June 30, 1977); see also *Lyszkowski v. Commissioner*, T.C. Memo. 1995–235 (describing the information reporting requirements for slot machine jackpots), affd. without published opinion 79 F.3d 1138 (3d Cir. 1996). In determining the amount won from such games, for a bingo game or slot machine play, the amount wagered is not deducted. See sec. 7.6041–1(b)(1) and (2), Temporary Income Tax Regs., *supra*.

For nonresident aliens, section 1441(a) generally requires the payer of gambling winnings to withhold from such items a tax equal to 30 percent and to submit the amounts withheld to the IRS. The withholding entity also must file a Form 1042–S, Foreign Person's U.S. Source Income Subject to Withholding, with the IRS to report these gambling winnings and provide a copy of the form to the recipient for whom the form is prepared. See sec. 1.1461–1(b) and (c), Income Tax Regs.

The tax and withholding requirements apply to U.S. source gambling winnings of nonresident alien individuals unless the proceeds are exempt under provisions not relevant here or a treaty provision applies. See sec. 894(a).

When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used. *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991); *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 179–180 (1982). The plain words of the treaty control unless their effect is contrary to the intent of the signatories. *Sumitomo Shoji Am., Inc. v. Avagliano*, *supra* at 180; *Amaral v. Commissioner*, 90 T.C. 802, 812 (1988). The words of a treaty are to be interpreted according to their ordinary meaning as understood in the public law of nations. *Amaral v. Commissioner*, *supra* at 812. Where the Internal Revenue Code provides for the taxation of income, "Whatever basis there may be * * * for relieving the * * * tax must be found in the words or implications of the * * * [treaty]." *Maximov v. United States*, 373 U.S. 49, 51 (1963); cf. *DiPortanova v. United States*, 231 Ct. Cl. 623, 690 F.2d 169, 177 (1982).

The U.S.-Korea income tax treaty entered into force on October 20, 1979. Article 4, paragraph (1) of this treaty provides:

A resident of one of the Contracting States may be taxed by the other Contracting State on any income from sources within that other Contracting State and only on such income, subject to any limitations set forth in this Convention. For this purpose, the rules set forth in Article 6 (Source of Income) shall be applied to determine the source of income.

Article 6, paragraph (9) of the U.S.-Korea income tax treaty provides that income not otherwise addressed, as is the case with gambling income, shall be determined by each of the Contracting States in accordance with its own law.

The U.S.-Korea income tax treaty does not establish an exemption from tax for South Korean residents with respect to U.S. gambling income, and there is no provision permitting South Korean residents to deduct gambling losses or to otherwise net gambling losses against gambling winnings. Accordingly, petitioner's gambling winnings are taxable under section 871(a)(1), and no deductions are permitted for gambling losses.

Petitioners do not argue that petitioner's gambling income is not taxable under the U.S.-Korea income tax treaty, but they contend that the Treaty of Friendship, Commerce and Navigation, U.S.-S. Kor., art. XI, Nov. 28, 1956, 8 U.S.T. 2217 (FCN treaty), entitles them to exemption from U.S. tax on the gambling income.

The FCN treaty is one of a series of Friendship, Commerce and Navigation Treaties that the United States signed with various countries after World War II. The treaties were initially negotiated for the purpose of encouraging American investment abroad but also secured reciprocal rights that granted protection to foreign businesses and individuals operating in the United States. See *MacNamara v. Korean Air Lines*, 863 F.2d 1135, 1138 (3d Cir. 1988) (citing Walker, "Treaties for the Encouragement and Protection of Foreign Investment: Present United States Practice", 5 Am. J. Comp. L. 229 (1956)); *Spiess v. C. Itoh & Co. (America), Inc.*, 643 F.2d 353, 359 (5th Cir. 1981). South Korea and the United States signed the FCN treaty with the goals of "strengthening the bonds of peace and friendship traditionally existing between" each other and of "encouraging closer economic and cultural relations between their peoples." FCN treaty, Proclamation.

Article XI, paragraph 3 of the FCN treaty provides:

Nationals and companies of either Party shall in no case be subject, within the territories of the other Party, to the payment of taxes, fees or other charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, more burdensome than those borne by nationals, residents and companies of any third country.

This provision extends "most-favored-nation" status to nationals and companies of South Korea and the United States. A most-favored-nation status assures nationals of the

other signatory treatment equivalent to the most favorable treatment afforded any other foreign nationals. See *MacNamara v. Korean Air Lines*, *supra* at 1142–1143.

Within the same article, paragraph 5(b) applies reservations to this most-favored-nation provision:

Each Party reserves the right to: (a) extend specific tax advantages on the basis of reciprocity; (b) accord special tax advantages by virtue of agreements for the avoidance of double taxation or the mutual protection of revenue; and (c) apply special provisions in allowing, to non-residents, exemptions of a personal nature in connection with income and inheritance taxes.

Petitioners maintain that because residents of certain third countries would not be subject to tax on gambling winnings from within the United States under bilateral income tax treaties that those countries have entered with the United States, the most-favored-nation provision of FCN treaty article XI, paragraph 3, entitles them to Federal income tax exemption. Petitioners refer to IRS Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities, and the section addressing "Other Income", which states:

Gambling income of residents (as defined by treaty) of the following foreign countries is not taxable by the United States: Austria, Czech Republic, Denmark, Finland, France, Germany, Hungary, Ireland, Italy, Japan, Latvia, Lithuania, Luxembourg, Netherlands, Russian Federation, Slovak Republic, Slovenia, South Africa, Spain, Sweden, Tunisia, Turkey, Ukraine, and the United Kingdom.

Respondent asserts that the reservations of FCN treaty article XI, paragraph 5(b) apply to preclude application of the most-favored-nation provision of FCN treaty article XI, paragraph 3, and that petitioner's U.S. gambling income is subject to U.S. income tax.

Certain foreign countries, including Japan, have entered into income tax treaties with the United States that have treaty benefits excluding U.S. gambling income from the Federal taxable income of their residents. See Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, U.S.-Japan, Nov. 6, 2003, Tax Treaties (CCH) par. 5201 (U.S.-Japan income tax treaty). The Senate report from the Committee on Foreign Relations stated that the principal purposes of the U.S.-Japan income tax treaty are to reduce or eliminate double

taxation of income earned by residents of either country from sources within the other country, to prevent avoidance or evasion of the taxes of the two countries, to promote close economic cooperation between the two countries, and to eliminate possible barriers to trade and investment caused by overlapping taxing jurisdictions of the two countries. See Senate Comm. on Foreign Relations, S. Exec. Rept. 108–9, at 1–2 (2004).

Article 21, paragraph 1 of the U.S.-Japan income tax treaty provides:

Items of income beneficially owned by a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention * * * shall be taxable in that Contracting State.

The U.S. Department of the Treasury Technical Explanation of the 2003 U.S.-Japan Income Tax Treaty (Feb. 25, 2004), Tax Treaties (CCH) par. 5233, states that

Examples of items of income covered by Article 21 include income from gambling, punitive (but not compensatory) damages, covenants not to compete, and income from certain financial instruments to the extent derived by persons not engaged in the trade or business of dealing in such instruments * * *.

FCN treaty article XI, paragraph 5(b), expressly reserved the right to extend specific tax advantages on the basis of reciprocity and accord special tax advantages by virtue of agreements for the avoidance of double taxation or the mutual protection of revenue. This reservation encompasses the more favorable treatment with respect to Federal income tax of U.S. gambling winnings, as extended to Japan and other relevant countries through the bilateral income tax treaties. The most-favored-nation provision under article XI, paragraph 3 of the FCN treaty is thus not available when the reservations of paragraph 5(b) apply.

We conclude that the plain language of the FCN treaty does not extend to petitioners the more favorable treatment—Federal income tax exemption—with respect to gambling winnings as provided for in the relevant bilateral income tax treaties between the United States and other countries.

*Trade or Business Within the United States*

Petitioners argue that if a treaty provision does not exempt the gambling winnings from income tax, then the income is from personal services of petitioner and taxable as income effectively connected with a U.S. trade or business.

Income of a nonresident alien individual that is effectively connected with the conduct of a trade or business in the United States is generally subject to tax in the same manner and at the same rates as that of a U.S. person. See sec. 871(b). The phrase "trade or business within the United States" generally includes the performance of personal services within the United States at any time within the taxable year. Sec. 864(b). Deductions are allowed to the extent that they are related to effectively connected income. See sec. 873(a). Section 165(d) provides that gambling losses may be deducted against gambling winnings.

Petitioners rely on *Robida v. Commissioner*, T.C. Memo. 1970–86, affd. 460 F.2d 1172 (9th Cir. 1972), to support their position that petitioner's gambling winnings income is income from personal services. *Robida* addressed "earned income" under section 911 (regarding foreign earned income and taxation of U.S. citizens or residents). Petitioners contend that the term "earned income" in section 911(b)(1)(A) "incorporates the same language as in * * * section 864(b) and the regulations as income attributable to 'services performed' and is certainly consistent with the definition of income from personal services used in * * * section 864(b)."

The issue in *Robida* was whether the taxpayer, a citizen of the United States, "earned" income abroad with respect to his slot machine winnings for purposes of the foreign earned income exclusion for U.S. citizens under section 911. It was determined that the taxpayer's "diligent application of an unusual skill or knowledge gained during his previous employment with a manufacturer of slot machines" resulted in "earned income", as compared to assuming risk and winning the income in a game of chance. *Robida v. Commissioner*, 460 F.2d at 1174–1175.

Petitioner exhibited no such use of personal skills or strategies when he played the slot machines. Thus, petitioners' reliance on *Robida* to claim that the gambling winnings were derived from the performance of personal

services is misplaced. Petitioner's gambling winnings income is not income from personal services.

Petitioners did not initially argue that petitioner's gambling activity constituted a trade or business, but respondent addressed this issue in his opening brief. In their reply brief petitioners argued that petitioner's gambling activities were a trade or business because petitioner had a profit motive in playing slot machines and petitioner was willing to commit the capital necessary to carry out his gambling activity.

To be engaged in a trade or business within the meaning of section 1402(a), an individual must be involved in an activity with continuity and regularity, and the primary purpose for engaging in the activity must be for income or profit. *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987). If one's "gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business". *Id.* Cases using the *Groetzinger* standard have analyzed the taxpayer's gambling activities with regard to regulations promulgated under section 183 to identify activities not engaged in for profit. See, e.g., *Chow v. Commissioner*, T.C. Memo. 2010–48; *Hastings v. Commissioner*, T.C. Memo. 2009–69; *Merkin v. Commissioner*, T.C. Memo. 2008–146.

Whether the taxpayer engages in an activity with the primary purpose of making a profit is a question of fact to be resolved on the basis of all the facts and circumstances in a particular case. *Golanty v. Commissioner*, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183–2(a), Income Tax Regs. Section 1.183–2(b), Income Tax Regs., provides a nonexclusive list of relevant factors to be weighed when considering whether a taxpayer is engaged in an activity for profit. The relevant factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other activities for profit; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned from the activity; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or

recreation are involved in the activity. No one factor is determinative of whether an activity is engaged in for profit. *Brannen v. Commissioner*, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); *Golanty v. Commissioner*, *supra* at 426; sec. 1.183–2(b), Income Tax Regs.

Petitioners do not address the factors of section 1.183–2(b), Income Tax Regs., and do not persuade us that petitioner's primary purpose for engaging in the gambling activity was for income or profit. Petitioners have not shown that petitioner's gambling activities are a trade or business within the United States.

*Interest Income*

The parties have stipulated that petitioners earned U.S. source interest income in 2006 and 2007 that was not effectively connected with a U.S. trade or business. Petitioners contend that the interest income is excludable from tax as simple interest on deposits under section 871(i)(1) and (2)(A). Respondent requested information from petitioners to demonstrate that the interest income was from bank deposits to be considered "earnings from deposits", as petitioners contend. In their brief, petitioners state that they "are still attempting to provide this evidence, but it is quite apparent from the face of the tax return that this is bank interest and nothing more."

Respondent asserts that petitioners have failed to present credible evidence regarding the type of interest income received in 2006 and 2007. Respondent concedes that article 13, paragraph (2) of the U.S.-Korea income tax treaty provides for a reduced tax rate of 12 percent on the interest income for 2006 and 2007, but respondent contends that it is not excludable from Federal income tax.

Section 871(a)(1) generally provides that a tax of 30 percent is imposed, as relevant here, on interest that a nonresident alien individual receives from sources within the United States, provided that the income is not effectively connected with the conduct of a U.S. trade or business. Article 13, paragraph (2) of the U.S.-Korea income tax treaty provides that for interest income the tax rate is 12 percent instead of 30 percent. Section 871(i)(1) and (2) provides an exception for interest on deposits that is not effectively con-

nected with a trade or business within the United States. Section 871(i)(3) provides:

For purposes of paragraph (2), the term "deposit" means amounts which are—

    (A) deposits with persons carrying on the banking business,

    (B) deposits or withdrawable accounts with savings institutions chartered and supervised as savings and loan or similar associations under Federal or State law, but only to the extent that amounts paid or credited on such deposits or accounts are deductible under section 591 (determined without regard to sections 265 and 291) in computing the taxable income of such institutions, and

    (C) amounts held by an insurance company under an agreement to pay interest thereon.

Petitioners reported interest income on the 2006 and 2007 tax returns that was not reported to the IRS by the payers listed on the returns. In the 2007 notice of deficiency, respondent adjusted the interest income to reflect reporting from third parties that had not been reported on the tax returns, including interest income that was reported to the IRS by Wells Fargo, N.A., a U.S. national banking institution.

Although petitioners did not supply evidence with respect to the interest income from Wells Fargo, N.A., it was the bank that directly reported the interest income to the IRS. The interest income from Wells Fargo, N.A., was erroneously included by respondent in the adjusted amount because it is excludable as deposits with persons carrying on the banking business. See sec. 871(i)(1), (2), and (3).

Interest income for 2007 was reported from another third party, First Clearing, L.L.C., but this entity is not a U.S. chartered national bank, and petitioners have not shown that this interest income qualifies for an exception from tax. See Rule 142(a).

Petitioners have been unable to supply documentation with respect to the interest income they reported on the tax returns to demonstrate the reported interest income is from deposits as defined in section 871(i)(3) to be excepted from tax under section 871(i)(1) and (2). Tax returns do not establish the truth of the facts stated therein. *Lawinger v. Commissioner*, 103 T.C. 428, 438 (1994); *Wilkinson v. Commissioner*, 71 T.C. 633, 639 (1979); *Roberts v. Commissioner*, 62 T.C. 834, 837 (1974). The 2006 and 2007 interest income, except the excludable 2007 interest income from

Wells Fargo, N.A., is subject to income tax at the rate of 12 percent according to the provisions of the U.S.-Korea income tax treaty.

*Section 6662(a) Penalties*

Petitioners contest the imposition of accuracy-related penalties for the years in issue. Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to rules or regulations. Sec. 1.6662–3(b)(2), Income Tax Regs. Disregard of rules or regulations is reckless if the taxpayer makes little or no effort to determine whether a rule or regulation exists. *Id.*

There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. See *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority under section 6664. See Rule 142(a); *Higbee v. Commissioner*, *supra* at 446–447.

Respondent has met the burden of production by showing that petitioners' failure to report gambling and interest income for the years in issue resulted in understatements of their income tax for the years in issue by more than $5,000 and by more than 10 percent of the tax required to be shown on the returns.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); *Higbee v. Commissioner, supra* at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. Sec. 1.6664–4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the relevant facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.* Reliance on professional advice may constitute reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. See *United States v. Boyle*, 469 U.S. 241, 250–251 (1985); *Freytag v. Commissioner*, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); sec. 1.6664–4(b)(1), Income Tax Regs. In order for reliance on professional advice to excuse a taxpayer from negligence, the taxpayer must show that the professional had the requisite expertise, as well as knowledge of the pertinent facts, to provide informed advice on the subject matter. See *David v. Commissioner*, 43 F.3d 788, 789–790 (2d Cir. 1995), affg. T.C. Memo. 1993–621; *Freytag v. Commissioner*, *supra* at 888.

Petitioners contend that they could reasonably rely on Pechanga to follow the law and on the tax preparer to properly report the gambling winnings income. Pechanga did not withhold the 30-percent tax from all of petitioner's gambling winnings and reported the winnings on Forms W2–G. However, petitioner signed a Form W–9 in 2007 that erroneously represented his status for withholding purposes. Petitioners have failed to provide any evidence concerning information provided to or advice received from their tax return preparers and/or other professionals.

Petitioner was educated in the United States and is a high-ranking executive at a large chemical company. These factors tend to weigh against petitioners' claim of reasonable cause and good faith with respect to all or part of the underpayments.

We conclude that petitioners' underpayments of Federal income tax were the result of negligence or disregard of rules or regulations under section 6662(a) and (b)(1). We also conclude that petitioners have not shown that they had reasonable cause for and acted in good faith regarding the underpayments. Thus, we sustain the IRS determination that petitioners are liable for the penalties for 2006 and 2007 under section 6662(a).

We have considered all arguments of the parties, and to the extent not mentioned they are moot or without merit. To reflect concessions and our conclusions stated above,

*Decisions will be entered under Rule 155.*