T.C. Memo. 2012-296

UNITED STATES TAX COURT

LAKEISHA RENEE FIGURES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9049-11.                          Filed October 23, 2012.

R determined tax deficiencies and accuracy-related penalties
pursuant to I.R.C. sec. 6662(a) for P's 2007, 2008, and 2009 taxable
years. R disallowed P's fictitious business losses and unsubstantiated
gambling losses for all taxable years at issue, adjusted P's business
income for 2009, disallowed a deduction for taxes for 2009, and
disallowed the American opportunity credit P claimed for 2009. At
trial P conceded the disallowance of the business losses and the
adjustment to business income, leaving only the disallowance of
gambling loss deductions for all years, deductions for taxes, the
education credit, and the accuracy-related penalties in dispute.

Held: R's disallowance of the gambling losses for all years and
the American opportunity credit for 2009 is sustained.

**[\*2]**        <u>Held</u>, <u>further</u>, P is entitled to an itemized deduction for taxes of $958 for 2009.

        <u>Held</u>, <u>further</u>, P is liable for the I.R.C. sec 6662(a) penalties.

<u>LaKeisha Renee Figures</u>, pro se.

<u>Vivian Bodey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for redetermination of income tax deficiencies and section 6662(a) accuracy-related penalties for the 2007, 2008, and 2009 taxable years.[1]  At trial petitioner conceded business expense deductions of $50,541 for 2007, $45,511 for 2008, and $44,174 for 2009. Petitioner also conceded respondent's adjustment to business income for 2009 from $4,896 to zero.  The remaining issues before the Court are:  (1) whether petitioner is entitled to certain claimed itemized deductions for 2007, 2008, and 2009 of $8,500, $23,387, and $14,507, respectively, which include gambling

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code) as amended and in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] losses of $8,500, $15,455, and $5,522 for 2007, 2008, and 2009, respectively, and tax for 2009 of $7,142; (2) whether petitioner is entitled to the claimed 2009 American opportunity credit of $900; and (3) whether petitioner is liable for an accuracy-related penalty under section 6662(a). Other adjustments to petitioner's taxable income and credits are computational.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts with accompanying exhibits is incorporated herein by this reference. At the time the petition was filed, petitioner resided in California.

Petitioner was employed as a correctional officer for the State of California for the taxable years in issue. In her spare time petitioner decorated cakes as a hobby. She did not consider this hobby a business, though she sometimes received some payment to cover her costs, and she did not report the payments as taxable income. She also attended at least one class involving cake decorating. In addition, petitioner would go to casinos with her friends and play the slot machines. Petitioner never won much, and whatever she did win, she played right

---

[2]We note that one of these computational adjustments, the disallowance of the Hope Scholarship Credit for 2008, is erroneously included in respondent's explanation of items for 2007.

[*4] back into the machines.  Petitioner did not use a slot club card, nor did she provide any records of her winnings and losses.

At some point petitioner made the ill-fated decision to use Nationwide Tax Solution, also known as Vaughn's Tax Services, to prepare her 2007, 2008, and 2009 income tax returns.  Bertha R. Vaughn, also known as Bertha R. Milton, owned and operated Nationwide Tax Solution.

In preparing petitioner's 2007 Form 1040, U.S. Individual Income Tax Return, Ms. Vaughn advised petitioner that she could deduct expenses related to her cake decorating hobby.  Petitioner provided Ms. Vaughn with some information regarding supplies she had purchased.  Petitioner never told Ms. Vaughn that she decorated cakes professionally or that she ever considered her hobby a business.  Nonetheless, Ms. Vaughn prepared a Schedule C, Profit or Loss From Business, listing petitioner as having a business of catering and cake decorating.  The Schedule C listed a series of fictitious expenses for a total business loss of $50,541.

In addition, petitioner told Ms. Vaughn that she had gambling losses.  Ms. Vaughn included an $8,500 deduction for gambling losses under miscellaneous deductions as "casino" on petitioner's Schedule A, Itemized Deductions.  In total, petitioner's return for 2007 showed she had no tax liability and was due a refund

[*5] of $6,318.  Margarita Oregon, an employee for Vaughn's Tax Service, prepared petitioner's 2007 Form 1040, which was filed electronically.  Petitioner did not review the Form 1040 before it was filed.

Ms. Vaughn also prepared petitioner's 2008 Form 1040.  Again, Ms. Vaughn prepared a Schedule C.  This time, Ms. Vaughn created a fake janitorial business for the return, listing petitioner's business as "janitorial" on the Schedule C.  Petitioner never told Ms. Vaughn that she had a janitorial business, nor did she ever have a janitorial business.  The Schedule C listed a number of fictitious expenses for a total business loss of $45,511.

Ms. Vaughn also prepared a Schedule A that listed a $15,455 deduction for gambling losses.  Also of note is that line 70, titled "recovery rebate credit", on petitioner's 2008 Form 1040 was blank, meaning that she was not claiming the credit.  In total, petitioner's 2008 return showed she had a tax liability of $1,680 but was due a $4,890 refund because of $5,674 of claimed income tax withholding and $896 of claimed additional child tax credit.  The 2008 return was filed electronically, and again petitioner did not review the return before its filing.

Ms. Vaughn also prepared petitioner's 2009 Form 1040 Federal tax return.  Again, Ms. Vaughn prepared a Schedule C for a fictitious janitorial business.  This

**[\*6]** time the imaginary business generated imaginary income, but expenses more than offset that income. The Schedule C reported a net business loss of $39,278.

Ms. Vaughn prepared a Schedule A that claimed a $5,522 deduction for gambling losses and a $7,142 deduction for taxes. Petitioner's Form 1040 also claimed a $900 refundable American opportunity credit. In total petitioner's 2009 return showed that she had no tax liability for the year and that she was due a $5,947 refund. The claimed refund arose from the American opportunity credit and three other improperly claimed credits, the additional child tax credit for $2,000, the earned income credit for $2,647, and the making work pay credit for $400. For the third year in a row, petitioner did not review her tax return before it was filed electronically.

In 2008 or 2009 petitioner filed for bankruptcy. To complete the process petitioner needed to obtain copies of her tax returns. When she approached Nationwide Tax Solution and Ms. Vaughn to get copies of her returns, petitioner got the "runaround". It was around this time that petitioner learned that something was wrong with her returns because she was being told that she had a janitorial business. Petitioner stated that she never received from Ms. Vaughn an explanation about the janitorial business and was never able to get copies of her

**[*7]** tax returns or supporting documentation for her bankruptcy proceeding, for respondent's audit, or for the trial in this case.

Not surprisingly, the Department of Justice took an interest in Ms. Vaughn, perhaps because 90% of her clients received refunds. Ms. Vaughn pleaded guilty in Federal court on November 28, 2011, to four counts of aiding and assisting in the presentation of a false income tax return to the Internal Revenue Service (IRS) under section 7206. Ms. Vaughn admitted in her plea agreement that she had fabricated material items on tax returns, which created more complex returns and generated refunds so that she could charge her clients higher fees and get recommendations for new clients.

Respondent issued a notice of deficiency dated January 10, 2011, determining the following deficiencies and section 6662(a) penalties:

| Year | Deficiency | Penalty Sec. 6662(a) |
| --- | --- | --- |
| 2007 | $12,219 | $2,443 |
| 2008 | 15,115 | 3,023 |
| 2009 | 8,653 | 1,730 |

For the 2007 through 2009 tax years respondent disallowed the Schedule C losses and the Schedule A deductions for gambling losses. For the 2009 taxable year respondent also disallowed the claimed America opportunity credit, adjusted

**[\*8]** petitioner's business income, and disallowed the Schedule A deduction for taxes. Respondent also adjusted petitioner's 2008 tax liability by $300 by disallowing the recovery rebate credit because of computational adjustments.

Petitioner timely petitioned this Court. A trial was held on March 19, 2012, in Los Angeles, California.

OPINION

As an initial matter, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that they are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In certain circumstances, section 7491(a) shifts the burden of proof to the Commissioner. Petitioner has not alleged that section 7491(a) applies and has not established that she is in compliance with the substantiation and recordkeeping requirements of that section. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proving entitlement to the claimed deductions.

Deductions and credits are a matter of legislative grace, and taxpayers must prove entitlement to the deductions and credits claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); LaPoint v. Commissioner, 94 T.C. 733, 736-737 (1990). Taxpayers are required to identify each deduction and credit, show that they have met all requirements, and keep books or records to

[*9] substantiate all claimed deductions and credits. Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.

I.     Gambling Loss Deductions

Petitioner claimed itemized deductions for gambling losses of $8,500, $15,455, and $5,522 for 2007, 2008, and 2009, respectively. These deductions are allowable, if at all, under section 165(d). Taxpayers who are not in the trade or business of gambling and who choose to calculate their taxable income using itemized deductions in lieu of the standard deduction, secs. 63, 161, may deduct gambling losses under certain circumstances. Section 165(d) provides that "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Thus, petitioner faces a dual burden. See Rodriguez v. Commissioner, T.C. Memo. 2001-36 (citing Schooler v. Commissioner, 68 T.C. 867, 869 (1977)). First, petitioner must prove she had losses during the years at issue. See Rios v. Commissioner, T.C. Memo. 2012-128 (citing Mack v. Commissioner, 429 F.2d 182, 184 (6th Cir. 1970), aff'g T.C. Memo. 1969-26).

Second, even if petitioner could substantiate her gambling losses, she would still have to show gambling winnings, which would be includible in her gross income. See, e.g., Park v. Commissioner, 136 T.C. 569, 573 (2011); Rodriguez v.

[*10] Commissioner, T.C. Memo. 2001-36.  Petitioner has not reported or paid tax on any gambling income for the years at issue.  At trial petitioner stated that she never won large prizes and made no attempt to substantiate or report as gross income the amounts that she did win.  Whether a taxpayer has substantiated gambling losses is a question of fact "to be decided on the basis of all the evidence." Schooler v. Commissioner, 68 T.C. at 869.

Petitioner offered only her testimony that she played the slots quite often and that she incurred some losses.  While this Court may estimate the amounts of allowable deductions, the taxpayer must first provide some credible evidence upon which to base the estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); see also Rios v. Commissioner, T.C. Memo. 2012-128.  Petitioner did not keep any records that would help us to determine the amounts of gambling losses or winnings for the years at issue.  She did not testify as to the number of times she played or as to the amount of money she lost at any given visit.  Thus, we do not have enough evidence upon which to base an estimate as to petitioner's gambling losses.  We affirm respondent's disallowance of the gambling deductions.

**[*11]** II.    <u>Taxes</u>

Respondent disallowed petitioner's 2009 taxable year Schedule A deduction

for taxes of $7,142.[3]  Section 164 provides the rules under which taxpayers

choosing to use itemized deductions may deduct certain taxes.  Petitioner deducted

general sales taxes of $542, real estate taxes of $3,500, and other taxes of $3,100,

of which $600 was labeled "DMV".  Petitioner bears the burden of proof with

respect to this deduction.  <u>See</u> Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503

U.S. at 84.  Petitioner did not present any evidence that she was entitled to the

deduction claimed with respect to the real estate taxes and other taxes.

The deduction for the general sales taxes, however, is different.  In 2009

section 164(b)(5) allowed taxpayers to elect to deduct State and local sales taxes in

lieu of deducting State and local income taxes.  A taxpayer may deduct the actual

---

[3]On her 2009 Schedule A petitioner claimed a total deduction for taxes of $7,142, although the total of the individual tax amounts shown is $7,742. Respondent's worksheets attached to Form 4549-A, Income Tax Discrepancy Adjustments, list ($58) as the deduction for taxes found per exam.  This perplexing negative finding resulted in respondent's adjustment of $7,200, an amount greater than the $7,142 petitioner claimed on her return.  We do not see and respondent has not explained how this extra disallowance is possible, and absent explanation from respondent we limit the disallowance to $6,184, which is the amount claimed on the return, $7,142, minus the amount we found petitioner is entitled to, $958.  Perhaps the $58 was a refund of taxes paid in a prior taxable year.  If so it would normally be reported on line 10 or 21 on the first page of the 2009 Form 1040 and not as a contra item on Schedule A.

[*12] amount of sales taxes paid, which would require substantiation. Alternatively, the Commissioner, as a matter of administrative convenience, permits taxpayers to calculate the amount of the deduction by using the guidelines known as Optional State and Certain Local Sales Tax Tables, which the IRS publishes. Sec. 164(b)(5)(H); 2009 Instructions for Schedule A (Form 1040), at A-3.

Petitioner elected to deduct State and local sales taxes in lieu of State and local income taxes, and she used the Commissioner's tax tables to arrive at a deduction of $542. 2009 Instructions for Schedule A (Form 1040), at A-12. This deduction becomes computational, and petitioner did not need to further substantiate the deduction. See Roberts v. Commissioner, T.C. Memo. 1996-346 (finding that the taxpayers were "entitled to a deduction for general sales tax, which, in the absence of substantiation of actual expenditure, could be claimed based on tables promulgated by respondent based upon reported income"). Because respondent increased petitioner's relevant income to $66,978, petitioner, with three claimed exemptions for herself and two children, is now entitled to a

[*13] greater deduction of $958 according to the 2009 tax tables.[4]  2009 Instructions

for Schedule A (Form 1040), at A-12.

Thus for 2009 we sustain respondent's determination with respect to the

deduction of real estate and other taxes but find petitioner is entitled to a deduction

for general sales taxes of $958.

III.    Education Credit

Respondent disallowed petitioner's claimed American opportunity credit for

2009.  The American opportunity credit is a modified version of the Hope

Scholarship Credit and is in effect for tax years 2009 to 2012.  Sec. 25A(i).  The

American opportunity credit provides for a credit against tax equal to "(A) 100

percent of so much of the qualified tuition and related expenses paid by the

taxpayer during the taxable year * * * as does not exceed $2,000, plus (B) 25

percent of such expenses so paid as exceeds $2,000 but does not exceed $4,000."

Sec. 25A(i)(1).  The credit phases out for taxpayers whose modified adjusted

income exceeds $80,000, or $160,000 for married taxpayers filing joint returns.

Sec. 25A(i)(4).  In addition, up to 40% of this credit may be refundable.  Sec.

---

[4]Petitioner may be entitled to a greater deduction if there were additional local general sales taxes in place for the taxable year.  See 2009 Instructions for Schedule A (Form 1040), at A-5 (instructing residents of California to make an additional calculation if their combined State and local general sales tax rate exceeds 8.0034%).

[*14] 25A(i)(6). Even with respondent's other adjustments to petitioner's 2009 return, petitioner still met the income requirements to receive a credit.

But petitioner bears the burden of proving entitlement to the credit. See LaPoint v. Commissioner, 94 T.C. at 736-737 ("Tax credits, like deductions, are a matter of legislative grace."). Petitioner did not produce any evidence tending to show she was eligible for this credit. She did not produce any records of tuition payments or related educational expenses. Thus, petitioner has not met her burden of proving entitlement to the American opportunity credit. We sustain respondent's disallowance of this credit.

IV.    Recovery Rebate Credit

Respondent also disallowed a $300 recovery rebate credit for 2008. Form 886-A, Explanation of Items, attached to respondent's notice of deficiency stated: "Because we changed your adjusted gross income and/or your earnings and those changes affected your modified adjusted gross income or earned income, we have also adjusted your recovery rebate." The recovery rebate was a one-time credit of up to $600 for single individual taxpayers who met certain requirements. Sec. 6428(a) and (b). The credit is increased by $300 per qualifying child of the taxpayer and decreased by 5% of the taxpayer's adjusted gross income that exceeds $75,000 or, in the case of joint returns, $150,000. Sec. 6428(b)(1)(B), (d).

**[\*15]** This credit is treated as a refundable credit.  Sec. 6428(c).  Because petitioner had two qualifying children, her total credit was $1,200 before the limit of section 6428(f) and (g).  However, because 5% of her adjusted gross income in excess of $75,000, as determined by respondent, exceeds $1,200, petitioner is not eligible for the credit.

That would be the end of any inquiry save one small detail.  Petitioner did not claim the credit on her 2008 Form 1040.  Line 70, where a taxpayer is supposed to enter the amount of the credit claimed, is blank.  The IRS did offer to take the onus of calculating the amount of the rebate off taxpayers, instructing them to write "RRC" on line 70 to have the IRS calculate the amount of the credit.   2008 Form 1040 Instructions 61.  Petitioner, however, did not write or type "RRC" or any other notation indicating she was claiming the credit.

We are thus left with the question of whether petitioner actually received this credit.  Respondent clearly thinks so but did not provide any evidence.  In fact, it may have been IRS practice to calculate a rebate even if the taxpayer entered zero on line 70 or left that line blank.  See I.R.S. News Release, IR-2009-10 (Jan. 30, 2009) ("If there is any question at all as to the amount that should be reported for the recovery rebate credit, the taxpayer or preparer should enter a zero on the appropriate line above, and the IRS will determine whether a recovery

**[\*16]** rebate credit is due, and, if so, how much.").[5]  If the IRS calculated recovery rebate credits for a taxpayer who entered zero, it is not beyond comprehension that they would do the same for a taxpayer who left the line blank.

We are reluctant to determine this adjustment to be correct solely on the cursory assertion in the notice of deficiency absent other proof in the record, but, in any event, this adjustment is a correlative computational adjustment to be resolved in the Rule 155 computation.

## V.    Accuracy-Related Penalty

Respondent bears the burden of production with regard to the section 6662(a) penalties.  See sec. 7491(c).  To meet this burden, respondent must produce sufficient evidence establishing that it is appropriate to impose the penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Petitioner retains the burden of establishing that the underpayments were due to reasonable cause and that she acted in good faith.  See id. at 447.

---

[5]The IRS later revised this news release to read "RRC" instead of "zero".  I.R.S. News Release, IR-2009-10 (updated Feb. 12, 2009).  We cite these documents and the Form 1040 instructions not as authority but merely to point out our confusion, and maybe the IRS' own confusion, as to how respondent credited petitioner with the recovery rebate credit in the first place.  We are also mindful that in this case the person who prepared the 2008 return is a criminal, and any examination of this return was necessarily complicated by that fact.

**[\*17]** Section 6662(a) imposes a penalty on an underpayment of tax required to be shown on the return if the underpayment is due to one or more of the causes specified in subsection (b).  Respondent contends that petitioner is liable for the penalty for each year in issue because of negligence or disregard of rules or regulations or, alternatively, because the underpayment is due to a substantial understatement of income tax.  Sec. 6662(b)(1) and (2).

We first address the underpayment on which this penalty is assessed.  Section 6664(a) defines "underpayment" as follows:

> SEC. 6664(a).  Underpayment.--For the purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of--
>
>> (1) the sum of--
>>
>>> (A) the amount shown as the tax by the taxpayer on his return, plus
>>>
>>> (B) amounts not so shown previously assessed (or collected without assessment), over
>>
>> (2) the amount of rebates made.

The imposition of the penalty for 2008 on the portion of the underpayment attributable to the disallowance of the recovery rebate credit is troubling.  We see no need to engage in an in-depth statutory analysis and only note that the phrase "the amount shown by the taxpayer on his return" must have some meaning.  The

**[\*18]** credit is not an amount shown on the return, an amount not so shown previously assessed, or a rebate. Sec. 6664(a)(1)(B), (2). Therefore, respondent cannot impose the accuracy-related penalty on an amount not shown on petitioner's return as in this context such an amount does not constitute an underpayment.

We turn next to respondent's assertion of the penalty on the grounds of negligence. "[N]egligence includes any failure to make a reasonable attempt to comply with the provisions of this title" (i.e., the Internal Revenue Code). Sec. 6662(c). Negligence has also been defined as "'a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). "Negligence is 'strongly indicated' when '[a] taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances.'" Hansen v. Commissioner, 471 F.3d 1021, 1029 (9th Cir. 2006) (quoting section 1.6662-3(b)(1)(ii), Income Tax Regs.), aff'g T.C. Memo. 2004-269. Disregard of rules or

[*19] regulations includes careless, reckless, or intentional disregard of Code provisions or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.; see also Park v. Commissioner, 136 T.C. 569. The failure to keep adequate books and records or to review a tax return before filing it also constitutes negligence. Woodsum v. Commissioner, 136 T.C. 585, 595-596 (2011); sec. 1.6662-3(b)(1), Income Tax Regs.

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate that: (1) there was reasonable cause for the underpayment and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer's reasonable and good-faith reliance on the advice of a professional may be a factor tending to show reasonable cause. Id.

Respondent has met his burden of production. Petitioner did not maintain records substantiating her deductions and losses as required by section 6001. In addition, petitioner did not seek to review her return, nor did she question why her returns generated large refunds compared to her wage income and withholding. In

[*20] short, they were "too good to be true."  See sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

Petitioner contends that her reliance on her tax preparer constitutes reasonable cause.  For 2007 petitioner relied upon Ms. Vaughn's advice that certain expenses relating to her cake decorating hobby were deductible, and Ms. Vaughn, on her own initiative, characterized petitioner's hobby as a business.  For 2008 and 2009 Ms. Vaughn went a step further, creating a fictitious janitorial business.  But "unconditional reliance on a preparer or adviser does not always, by itself, constitute reasonable reliance."  Owen v. Commissioner, T.C. Memo. 2012-21.  As criminal as Ms. Vaughn's behavior may have been, petitioner is not without fault here.

Taxpayers have a duty to review their tax returns before signing and filing them.  Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981).  By her own admission petitioner did not review any of the returns in question before signing the forms authorizing Ms. Vaughn to electronically file the returns.  Thus, petitioner cannot place the full blame on her return preparer. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987) ("As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer.").  Because petitioner did not make a reasonable effort to

**[\*21]** ensure her returns were accurate by reviewing them, she has not met her burden of proof with respect to reasonable cause.  See <u>Woodsum v. Commissioner</u>, 136 T.C. at 594-596; <u>Sandoval v. Commissioner</u>, T.C. Memo. 2001-310, <u>aff'd</u>, 67 Fed. Appx. 252 (5th Cir. 2003).  Therefore, we sustain respondent's application of the section 6662 penalty for each year at issue.

The Court has considered all of petitioner's contentions, argument, requests, and statements.  To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.